————o————

STATE OF MISSOURI, Appellant, *vs.* CURATORS STATE UNIVERSITY, Respondents.

1. *County bonds—Phelps county—Issue of for school of mines, etc.—State Constitution—Injunction, etc.*—The issue of bonds by Phelps county, under the act of January 24th, 1870, (Adj. Sess. Acts, 1870) in aid of the school of mines and metallurgy, at Rolla, was a lending of the credit of the county to a corporation, within the meaning of § 14, Art XI of the State Constitution, and a law authorizing the issue of said bonds without the sanction of two-thirds of the voters of the county was void. That section was not intended to be limited to private corporations, but applies also to those of a public nature.

Where a county orders the issue of such bonds without the popular vote, injunction is the proper remedy.

*Appeal from Boone Circuit Court.*

*Thomas Shackleford*, for Appellant.

I. The suit was properly brought in the name of the State. (State vs. Saline County, 51 Mo., 350.)

II. The defendants are proper parties defendants. (State vs. Sanderson, 51 Mo., 203.)

III. The bonds were issued by the County Court of Phelps, without the assent of the qualified voters of the county, and void. (See State Const., Art. XI, § 14.)

*James Taussig*, for Respondents.

I. The curators of the University of Missouri are a "public corporation"; an agency of the State, and part of the machinery of the State government. (Head vs. Curators, 47 Mo., 222.) Section 14, Art. XI, of the Constitution refers only to private corporations. (State vs. Wilcox, 45 Mo.,465.)

NAPTON, Judge, delivered the opinion of the court.

This action is brought by the State against the curators of the University, the County Court of Phelps county, and the Treasurer of the School of Mines. The petition sets out in detail various provisions of the act of the legislature of February 24, 1870, entitled "an act to locate and dispose of the congressional land grant of July 2, 1862, to endow, support and maintain schools of agriculture and the mechanic arts and a school of mines and metallurgy, and to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life."

This act, as the petition alleges, provides among other things for the establishment of a school of mines and metallurgy, as a branch or part of the University of the State, and is to be located in the mineral district of south-east Missouri, and in a county having mines therein, which shall donate to the Board of Curators of the University for building and other purposes of said school, the greatest available amount of money and bonds, not less than twenty thousand dollars in cash and twenty acres of land, the county to be selected and the school located therein by a committee of the Board of Curators selected for that purpose.

It is then recited that said act further provides, that the County Court of any county in said district is authorized and empowered to issue bonds of the county, in such sums as they may agree upon, to run not longer than twenty years, and

bear interest, not exceeding ten per cent. per annum, payable semi-annually, which bonds shall be delivered to the Board of Curators, to be by them sold and converted into cash, to be used in the erection of the necessary buildings, buying stock and making improvements, as set forth in § 9 of the act, and buying the land required to be donated therein.

The 12th section of the act is then recited in the petition, which provides, " that in order to raise the amount of money, and.to purchase the quantity of land specified in the preceding section, voluntary individual subscriptions may be made and received by the Board of Curators, and the corporate authorities of any city or town and the County Court of any county in the district mentioned in the foregoing section, are hereby authorized and empowered to issue bonds of such city, town or county, in such sums as they may agree upon, to run not longer than twenty years, and bearing interest, not exceeding ten per cent. per annum, payable semi-annually, which bonds shall be delivered to the Board of Curators, to be by them sold and converted into cash, to be used in the erection of the necessary buildings, buying stock and making improvements, as set forth in § 9 of this act, and of the land required to be donated therein, and any such city, town or county shall have power to levy such tax under the constitution and laws of the State, as may be needed to meet, according to the terms of the bonds, the payment regularly of the interest and principal when due."

The 11th section provides that the School of Mines and Metallurgy therein provided for, shall be located in the mineral district of south-east Missouri, but in consideration therefor, any county having mines therein, within such district, shall donate to the Board of Curators for building or other purposes of said school not less than $20,000 in cash, nor less than 20 acres in land, on which to erect buildings for the use of said school, and lots of mineral land in such quantity, quality, and kind as may be deemed necessary for said school for practical and experimental mining; the title of said land to be clear and indisputable, to be bought without charge to the

State or to said agricultural college fund, and to be conveyed to the State of Missouri by general warranty deed, etc.

The 12th section of the act provides, that in order to raise the amount of money to purchase the quantity of land specified in the 11th section, voluntary subscriptions may be made, etc., as stated heretofore.

And by the 13th section of said act, the curators were authorized to receive such subscriptions.

On the 13th of June, 1870, the County Court of Phelps county in the State, during the session of said court, made an order donating the bonds of that county to the amount of $50,000, and the necessary lands for the purpose of securing the location and establishment of said School of Mines within said county.

On the 7th of November, 1870, the county court made a further order to subscribe the further sum of $25,000 in addition to the amount before donated. The last sum was also to be in county bonds, making the entire subscription of Phelps county $75,000.

On the 19th day of December, 1870, the curators having before this, by a committee appointed by them, located the School of Mines in Phelps county, the County Court made an order ratifying the subscription of $75,000, and ordered the issue of bonds to the amount, in denominations of $1,000 bonds to be delivered to the agent of the curators, to be disposed of by said board for the benefit of said School of Mines; and on the 27th of December, 1870, the County Court of Phelps county issued 75 bonds of $1,000 each, payable at the Exchange Bank of St. Louis.

The plaintiff, after reciting the provisions of the legislative enactment and the proceedings of the County Court of Phelps county, under it, and the issue of the county bonds to the amount of $75,000, and their deposit with the curators, avers that the act of the legislature is unconstitutional, if it be construed to allow such subscription and issue of bonds without a vote of the people of Phelps county and the assent of two-thirds of the qualified voters thereof.

The plaintiff avers that no vote was taken in Phelps county, and that the order of the County Court was made without the assent of two-thirds of the qualified voters, and insists therefore, that the subscription and bonds were void, and that at all events the court should prohibit their being put on the market.

These bonds, it is averred, were issued under the act of the legislature aforesaid, and are now in the hands of the defendants, the curators, or in possession of the treasurer, and have not been sold, but defendants are threatening to sell them, and it is charged, that the County Court is about to levy a tax to pay them; and therefore the court is asked to inter-fere by injunction and prohibit their sale and the levy of taxes to pay them.

To the petition there was a demurrer, and this demurrer simply raises the question as to the power of the County Court of Phelps county to make this subscription and issue these bonds, without a vote of the people of the county.

The demurrer was sustained by the Circuit Court, and the propriety of the decision is the only question before this court.

There can be no doubt of the right of the State to interfere in this case, since the decision of the Saline county case, (51 Mo., 350) and the Callaway case, (51 Mo., 395).

The principal, indeed the only question in the case, arises on the construction of the 14th section of the 11th article of the Constitution, which provides that "the General Assembly shall not authorize any county, city or town to become a stockholder in, or to loan its credit to any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town, at a regular or special election, to be held therein, shall assent thereto."

It is not pretended that the provision of the Constitution was complied with, but it is urged that the subscription or loan of credit of Phelps county to the University was to a *public* corporation, and therefore not within the meaning of the constitutional restriction.

That the curators of the University constitute a corporation is not denied, but it is said that this provision of the Constitution was directed solely against subscriptions to private corporations. The language of the section makes no discrimination of the sort, nor does the main purpose of the prohibition require any such discrimination. What was the object of restriction on county courts, city and town municipalities? The object was plainly to prevent them from taxing the people, without their consent. No loan or credit was allowed to *any* company, association or corporation, without the consent of the people who had to pay it. The business of the company, association or corporation is not referred to in the Constitution. Whether educational, benevolent, industrial or otherwise, whether public or private, the object is not considered. It is manifestly the intention of the Constitution to prevent taxation without the assent of the tax-payers and without regard to the purposes of the proposed tax.

What right, then, has this court to interpolate the word "private," into this section of the Constitution? The corporation to which the bonds in question were issued, was in some respects a public corporation, and established for educational purposes—an object always held in high regard by the State; but why is this object, however laudable, to overturn a plain provision of the constitution, or to authorize a taxation which the Constitution forbids?

It may be that the corporation in this case is instituted to perform a more important public enterprise than one which proposes to build a road or bridge, or canal, and it may be that the State has fostered it as a public enterprise. Individual citizens may subscribe to it, but when a County Court undertakes to subscribe and to pay the subscription by county bonds, and by taxation to pay these bonds, it is difficult to see how such subscription and bonds are to occupy any different position from county bonds for any purpose of internal improvement or otherwise. The corporations proposing to build said roads and bridges, etc., are called private corporations, although for many purposes they are regarded as public

corporations, and in exercising the power of eminent domain undoubtedly exercise a public function granted by the State, and so far are public corporations.

Educational institutions are favorites with the State, but I do not observe that any exception is made in their favor when the Constitution prohibits taxation without a vote and an assent of a prescribed majority. It was thought, no doubt, that the people might as well be consulted in a contribution to a college, as a contribution to a railroad or any other industrial or mechanical enterprise. No discrimination was made by the constitution, and this court is without power to make any. Nothing is said in the Constitution about public corporations as distinguished from private corporations. We are unable to perceive any ground for such discrimination.

The case of the State vs. Wilcox, 45 Mo., 458, and Head vs. Curators of the University, 47 Mo. 222, have been cited, but they have really no bearing on the present case.

It will be observed that this is a case in which the issue of bonds, not authorized by the Constitution, is proposed to be arrested. When the proposed issue is not sanctioned by the requisite vote, we think it a suitable time to prevent the issue. After such bonds have been put upon the market and purchasers have invested in them, the question of their validity depends upon essentially different principles.

Judgment reversed; the other judges concur, except Judge Wagner, who did not sit in the case.