NORTH JERSEY ST. RY. CO. v. BRILL.

(Circuit Court of Appeals, Third Circuit. January 3, 1905.)

No. 31.

1. PATENTS—INVENTION—CAR TRUCKS.

    The Brill patents, Nos. 627,898 and 627,900, for car trucks, granted on a divisional application as to most of their claims, are void for lack of invention in view of the prior art, and especially of the Thyng patent, No. 4,276, which discloses every element of the Brill combination, with the exception that the links by which the semi-elliptic springs are suspended from the side frame of the truck were not elastic or extensible. Such links, however, were old in the art at the time of the Brill patents, and, if any of the claims therein are valid, they are limited to the specific form of link described. As so limited, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion of court below, see 124 Fed. 778. See, also, 125 Fed. 526.

Charles H. Duell and John R. Bennett, for appellant.
Francis Rawle and Edmund Wetmore, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This suit was brought for the alleged infringement of two letters patent, No. 627,898 and No. 627,900, both granted on June 27, 1899, to George M. Brill, who assigned them to the complainant. The latter of the two patents is divisional in its relation to the former. The original application was filed July 3, 1897, and the divisional application November 9, 1897. Both patents relate to improvements "in car trucks generally," but "especially to trucks employed in passenger service in connection with electric propulsion." The specification of patent No. 627,898 describes the various parts of the truck, and ends with 111 claims. Patent No. 627,900 has 19 claims. Thus the combined claims of the two patents number 130.

The claims of patent No. 627,898 involved in this appeal are as follows:

"(6) The combination of a truck having a frame, springs supported by said frame, hangers movably supported on said springs, semi-elliptic springs connecting said hangers, and means for supporting a car-body on the truck connected with said semi-elliptic springs, substantially as described."

"(10) The combination, in a car-truck, of the truck-frame, spring-links depending from the truck-frame, semi-elliptic springs connecting the links, and means for connecting said latter springs with a car-body, substantially as described.

"(11) The combination, in a car-truck, of the truck-frame, transversely-swinging spring-links depending from the truck-frame, semi-elliptic springs connecting said links, and a bolster having car-connecting means on said latter springs, said bolster being fixed securely to said springs and swinging in unison therewith, substantially as described."

"(13) The combination, in a car-truck, of the side frames, the semi-elliptic springs movably and resiliently suspended from the side frames, and a bolster secured to said springs, substantially as described.

"(14) In a car-truck, the combination with the side frames having axle-box pedestals, the longitudinally-disposed semi-elliptic springs, extensible and resilient connections between the ends of the said springs and the side frames at or near said pedestals, and a bolster secured to said springs, substantially as described.

"(15) In a car-truck, the combination with the side frames having axle-box pedestals, the bolster, longitudinally-disposed resilient supports for the bolster, and resilient connections between the ends of said supports and the side frames, substantially as described."

"(30) In a car-truck, the combination with the side frames, of the longitudinal leaf-springs, a bolster tying said springs together, links pendent from the truck-frame and adapted to move perpendicularly relatively to said frame, the ends of said springs resting on said links, and further springs adapted to resist the downward movement of the links, substantially as described."

"(80) The combination, in a car-truck, of the side frames, the semi-elliptic springs, a cross-bolster secured to said semi-elliptic springs, links suspended from the side bars and attached to said springs, and further springs combined with said links adapted to oppose the motion of the side frames or the semi-elliptic springs, substantially as described.

"(81) The combination in a car-truck, of the side frames, the semi-elliptic springs, a cross-bolster resting on the semi-elliptic springs, links, and springs

combined with said links, said links deriving their support from the side frames, and connecting the ends of the semi-elliptic springs with the side frames, substantially as described."

"(87) In a car-truck, the combination with the side frames of a car-body supporting bolster, pivotal supports for the bolster depending from the truck-frame, a resilient element directly secured to the bolster and springs for supporting said resilient element through said pivotal supports, substantially as described."

The claims of patent No. 627,900 here involved are as follows:

"(13) In a car-truck, the combination with the side frames, of the links comprising bolts pivoted between their ends, said links being pivotally suspended from the side frame, longitudinally-disposed semi-elliptic springs secured to the lower end of said bolts, a cross-bolster resting on said springs and further springs included in the link suspension of said semi-elliptic springs, substantially as described."

"(17) The combination in a car-truck having an upper chord, of the longitudinally disposed semi-elliptic springs, a transverse bolster supported upon said springs, links depending from and flexibly supported on said upper chord and passing through enlarged apertures therein, said links being articulated between their ends, the ends of the semi-elliptic springs being supported upon the lower articulation of said links, substantially as described."

In the opinion filed by the learned judge below he states that "it is only necessary to consider claim 13," adding that "it is admitted on the part of the complainant that, unless this suit can be maintained with respect to that claim, it cannot be maintained as to any of the claims of patent No. 627,898." For convenience we here again quote that claim:

"(13) The combination in a car-truck of the side frames, the semi-elliptic springs movably and resiliently suspended from the side frames, and a bolster secured to said springs, substantially as described."

The main question in the case is whether this combination was patentable at the time of Brill's alleged invention. Under the proofs it is very clear that the art of truck construction, whether relating to car-trucks generally or to trucks employed in passenger service in connection with electric propulsion, was old, and in a highly advanced state, at the time Brill made these patented improvements. The earliest patent which this record exhibits, namely, the patent to Thyng, No. 4,276, dated November 18, 1845, shows a four-wheel swing-bolster, pivotal car-truck. The bolster in this patent has a central or pivotal bearing and lateral or side bearings; it is supported upon longitudinally extending semi-elliptic springs; the ends of the bolster engage with the semi-elliptic springs beneath the side frames; the upper part of the bolster strikes against the side frames to prevent excessive lateral movement; the semi-elliptic springs are suspended from the side frames by universally moving links, and the links are located adjacent to the axle-boxes, so as to distribute the weight; the links are attached at the central part to the side frames; the side frames are outside the wheel base; and the bolster has transverse and likewise longitudinal movement as far as the transoms will permit, swinging on the links. The foregoing description, which we extract from the testimony of Mr. Abbott, the defendant's expert, we think is quite accurate; and we also adopt as correct his conclusion that the Thyng patent discloses every feature of the principal combination of the patents in suit, with the single exception that the links are not extensible, or, in other words,

do not embody a spring. This conclusion is confirmed by the opinion of the complainant's expert, Mr. Livermore, who (referring to certain prior patents) says:

"The first is the Thyng patent, No. 4,276, dated November 18, 1845. My comparison of the structure shown in this patent with the Brill truck has before been fully given. It does not disclose a car-truck embodying the combination of a truck-frame having side frames, a bolster, longitudinally arranged semi-elliptic springs supporting the ends of the bolster, the elastic links or elastic or extensible suspensions of any kind connecting the ends of the semi-elliptic spring with the side frames. It does, however, embody a combination including all of the above-named elements except the elastic and extensible links, and it has nonelastic links jointed for transverse swinging to connect the ends of the semi-elliptic spring with the side frames."

It appears, then, that the only advance made by Brill on Thyng was to substitute for the latter's nonelastic links for supporting the semi-elliptic springs extensible or elastic links. But elastic or spring links, or spring-suspended links, were old in car-trucks before the time of Brill's improvements here in suit. This record is replete with instances in the prior art in which spring-links, or spring-suspended links, practically identical with those of the complainant's patent, were employed in car-trucks for substantially the same purpose as are Brill's. For example, Longstreth's patent, No. 249,962, dated November 22, 1881, illustrates spring-supported links which support the ends of semi-elliptic springs. The Heffernan patent, No. 412,256, dated October 8, 1889, shows the combination of a truck-frame, spring-links depending from the truck-frame, semi-elliptic spring connecting the links, and means for connecting the latter springs with the car body. In his specification Heffernan states:

"I have herein shown my invention as applied to locomotives, and have also described the spring as being connected to certain character of frames or trucks; but I would herein state that I do not limit my invention either to a locomotive or to suspending the same from the bars described, as other forms of trucks requiring minor changes in this regard may be used in connection with my invention."

In Graham's patent, No. 503,044, dated August 8, 1893, semi-elliptic springs and extensible or spring-links are employed to support the car through the truck-frame, instead of through the bolster. But here we agree with the defendant's expert that "obviously the construction and co-active relationship of the parts are the same, and any one at all acquainted with mechanical matters will at once perceive that, if a semi-elliptic spring and such spring-links can be employed to support a car body in the manner shown in Graham's patent, that it can likewise be employed in the manner shown in complainant's patent."

The patent of Brill and Curwen, No. 610,118, issued August 30, 1898, upon an application filed November 8, 1896, shows as belonging to the prior art equalizing bars movably and resiliently suspended by spring-links from the side frames of a car truck. In this connection, and as part of the prior art, the Peckham patents, No. 464,253 and No. 563,685, dated respectively December 1, 1891, and July 7, 1896, merit particular consideration. In these Peckham patents spring-links are employed for supporting a load (the nose of the motor) so that it may have a universal and swinging motion, which is the function broadly of

the spring-links of the Brill patent here in suit. The spring-link illustrated in Fig. 4 of the Peckham patent No. 563,685 is practically identical with that of the complainant's patents. It has the ball and socket or universal head at its upper end, seated in a corresponding socket in the bar that supports it, and it embodies a spring with which the part it supports engages. The specification of this Peckham patent (referring to this spring link) states:

"The rods, 29, are provided at their upper ends with ball bearings, 31, operating within sockets, 32, which are bolted between the duplex transverse beams, 33. * * * By this construction of motor support the requisite flexible connection is secured for the heel of the motor."

Testifying with respect to this patent, Mr. Abbott expresses the following view, which we think is entirely sound:

"Peckham employs this universally swinging link to support the motor in his truck, but obviously it is immaterial whether the weight supported by such a link be a portion of the load of the car or a portion of the weight of the motor. The construction of the device and its co-active relationship with the parts with which it connects being once understood, it is adaptable, within the common knowledge of any ordinary mechanic, to a multitude of mechanical constructions."

The evidence, we think, fairly leads to the conclusion that the patentee, Brill, took the combination of Thyng's patent, but, instead of using the latter's form of link, substituted therefor another old form of link which had been commonly used for the same or analogous purposes, namely, an elastic or spring-controlled link, the character and function of which were well understood in the art. This substitution may have secured better results, but it did not involve invention. Stimpson v. Woodman, 10 Wall. 117, 19 L. Ed. 866; Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Pennsylvania Railroad Company v. Locomotive Truck Company, 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222; Office Specialty Mfg. Co. v. Fenton Mfg. Co., 174 U. S. 492, 19 Sup. Ct. 641, 43 L. Ed. 1058.

We have already made brief mention of the patent to Brill and Curwen, No. 610,118, dated August 30, 1898, issued upon an application filed November 3, 1896, which patent is for improvements in pivotal car-trucks, especially that class of trucks used on passenger cars electrically propelled. The declared primary object of the Brill and Curwen invention is to produce an easy riding truck; a truck having a great degree of elasticity, so as to enable it to adjust itself with the minimum amount of disturbance to the inequalities of the track. This patent has a more important bearing on the present controversy than yet has been intimated. It is the subject of the disclaimer contained in the principal patent in suit, No. 627,898. That disclaimer is as follows:

"The location of the semi-elliptic springs outside of the wheel-gauge on each side of the truck, together with the location of the links for supporting the semi-elliptic closely adjacent to the axle-boxes and the swinging of said springs from the truck-frame from such points gives a better support for the car-body than does the usual link-hung bolster supported from the truck transoms within the wheel-gauge. These general features of construction, however, are embraced in an application filed by Samuel M. Curwen and myself on the 3d day of November, 1896, Serial No. 610,902, and therefore I do not claim the same herein."

The court below held that this statement did not amount to a disclaimer of the combination of claim 13, and "all that was meant was that the patentee did not claim that the mere location of the semi-elliptic springs 'outside of the wheel-gauge' and location of the spring-links 'closely adjacent to the axle-boxes' involved novelty or patentability." But, without questioning this interpretation, it still may be affirmed that an important effect must be given to the disclaimer. It is a solemn concession of priority in favor of Brill and Curwen. The filing and issue dates of the Brill and Curwen patent show prima facie their priority over Brill, and we find no satisfactory evidence to rebut that prima facie showing. But the admission of the disclaimer settles the question of priority in favor of Brill and Curwen. Patent No. 610,118 to Brill and Curwen must be taken as part of the prior art. Now, the Brill and Curwen patent shows the combination in a car-truck of the truck-frame, spring-links depending from the truck-frame, equalizing bars connecting the links, and means for connecting the equalizing bars with the car body. We here quote two of the claims of the Brill and Curwen patent, namely, claims 7 and 12:

"(7) The combination, in a car-truck, of the side frames, spring-links depending from the side frames, longitudinal equalizing bars connecting the links below the side frames, and means for connecting said bars with a car body, substantially as described."

"(12) The combination, in a car-truck, of the side frames, the equalizing-bars movably and resiliently suspended from the side frames, and a bolster supported on said equalizing bars, substantially as described."

It is obvious that the only difference between the combination shown and claimed by Brill and Curwen and the principal combination of the claims involved in this suit is that the latter claims call for semi-elliptic springs for connecting the links, instead of equalizing bars. But we cannot agree that this is a patentable difference, in view of the prior art. As we have seen, it was old to use semi-elliptic springs for connecting the links. Moreover, it most clearly appears from the proofs that in the combination in question a semi-elliptic spring performs the function of an equalizing bar. Although flexible, the semi-elliptic spring acts as an equalizer. So much is conceded even by the Brill patent in suit, No. 627,898, which, in its specification, states: "The semi-elliptic longitudinally disposed springs not only afford efficient spring support of the car body on the truck, but act in a measure as equalizers, distributing the weight equally on the axle-boxes." The mere substitution of the old form of flexible equalizer, to wit, the semi-elliptic spring in place of the inflexible equalizer of Brill and Curwen, did not involve invention.

Upon consideration of all the proofs we hold that claim 13 of the Brill patent No. 627,898, and all the other claims in suit which rest upon the like combination, lack patentable invention.

If any of the claims in suit can be sustained at all, it can only be by limiting them to the specific form of link described in the complainant's patents. But, if so limited, infringement does not appear. The differences between the link of the complainant and the defendant's link are marked. The link of the complainant's patents embodies the following features: (1) A bolt or rod having a hemispherical head, which fits into a like hemispherical seat at the top of the side bar; (2) a spiral

spring inclosing the rod below the side bar; and (3) a stirrup or hanger, the lower end of which is below the rod, and there engages with the end of the semi-elliptic spring, the upper end of the stirrup passing inwardly, so as to rest upon a cap which is placed above the spring. In consequence of this construction the complainant's link has an unrestrained universal swing or movement, and also a telescopic or lengthening or shortening action by reason of its several parts sliding with relation to each other. The defendant's link is not so constructed, nor has it such universal swing or such sliding movement. The defendant's rod has not a hemispherical head but a crutch-shaped head, and therefore has not an unrestrained universal movement. The defendant's link has lateral swing, but longitudinal movement is resisted. The defendant has not the stirrup or hanger of the complainant's patent. The defendant does not have a spiral spring inclosing the rod below the side bar; on the contrary, the defendant's link is supported above the upper side of the side bar by a spring buffer. The evidence satisfies us that these differences are not formal, but substantial and material as respects results. We hold, therefore, that the defendant's links do not infringe the claim in question.

The decree of the Circuit Court is reversed, with costs, and the case is remanded to that court, with direction to enter a decree dismissing the bill of complaint, with costs.