BRILL *v.* WASHINGTON RAILWAY AND ELECTRIC COMPANY.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 66. Argued December 10, 13, 1909.—Decided January 17, 1910.

Where a decree to which he is privy has established the right of a manufacturer to sell an article, there is force in the argument that such right should be recognized in another suit against his customer and defended by him. *Kessler* v. *Eldred*, 206 U. S. 285.

Devices used in connection with steam railway cars are not patentable

as new inventions when applied to street railway cars, even though a long time may have elapsed between their first use and their application to street cars.

Where the claim is very narrow, as in this case, there is little room for the doctrine of equivalents.

30 App. D. C. 255, affirmed.

THE facts are stated in the opinion.

Mr. *Francis Rawle* and Mr. *Frederick P. Fish*, with whom Mr. *Melville Church* was on the brief, for appellant.

Mr. *H. S. Duell*, with whom Mr. *Charles H. Duell* and Mr. *F. P. Warfield* were on the brief, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity to restrain the infringement of a patent. The suit is brought against a party that is alleged to have used the patented device, but it is defended by the Peckham Manufacturing Company, the vendor, which is a successor by purchase to the Peckham Motor Truck and Wheel Company. The principal claim now relied upon was declared void in *North Jersey St. Ry. Co.* v. *Brill,* 134 Fed. Rep. 580; S. C., 67 C. C. A. 380, reversing the decision of the Circuit Court, 124 Fed. Rep. 778, 125 Fed. Rep. 526, a suit brought by the same plaintiff and said to have been defended by the Peckham Motor and Truck Company. (On the authority of that case a preliminary injunction against the present defendant was refused in *Brill* v. *Peckham Mfg. Co.,* 135 Fed. Rep. 784; S. C., 68 C. C. A. 486.) If the first Peckham Company was privy to the decree declaring the patent void there would be great force in the argument that that decree established, as against the plaintiff, the right of the Peckham Manufacturing Company to make and sell the patented article, and that the right ought to be recognized in a suit against its customer defended by it. *Kessler* v. *Eldred,* 206 U. S. 285, 288,

289. It is unnecessary to decide that question, because the formal proofs are wanting, but on the obvious facts we should be unwilling to come to a different conclusion from that reached in the earlier litigation and again in the present suit unless it was impossible to avoid the result. With these preliminaries we proceed to the merits of the case.

The present form of car used on the electric street railways is a long car resting by pivots upon two four-wheeled trucks. The plaintiff makes a truck of this sort and has a parent and a divisional patent for "Improvements in Car Trucks for Motor Propulsion and the Like," dated June 27, 1899, and numbered respectively 627,898 and 627,900. The arrangement in actual use may be described as follows, nearly in the plaintiff's words: The side frames are connected near the middle by two parallel metal cross-pieces or transoms, having space enough between them to allow another parallel piece, called the bolster, to move vertically, occupying the space between with but slight play. The car body rests on a pivot in the middle of the bolster. The ends of the bolster rest on the top of semi-elliptic springs parallel to and below the sides of the truck. The ends of the springs in their turn rest on two spring links hanging from the sides of the truck near the axles. More specifically they are supported on the bottom of metal bands or stirrups which surround and hang by their tops on spiral springs each of which is attached underneath to a metal bolt running up through its middle and connected at the top with the frame of the truck by a ball and socket-joint. That is to say the pin passes up through the frame, in which is a conoidal aperture to give it play in all directions, and the head of the pin is hemispherical seated in a like recess in the frame.

The claims relied upon are the following: In number 627,898 the parent patent,

"13. The combination in a car-truck, of the side frames, the semi-elliptic springs movably and resiliently suspended from the side frames, and a bolster secured to said springs, substantially as described."

"81. The combination in a car-truck, of the side frames, the semi-elliptic springs, a cross-bolster resting on the semi-elliptic springs, links, and springs combined with said links, said links deriving their support from the side frames and connecting the ends of the semi-elliptic springs with the side frames, substantially as described."

In 627,900, the divisional patent,

"13. In a car-truck, the combination with the side frames, of the links comprising bolts pivoted between their ends, said links being pivotally suspended from the side frames, longitudinally-disposed semi-elliptic springs secured to the lower-end of said bolts, a cross-bolster resting on said springs, and further springs included in the link suspension of said semi-elliptic springs, substantially as described.

"14. In a car-truck, the combination with the side frames, of the cross-bolster suspended below the side frames by semi-elliptic springs and pivotal links, said links comprising a plurality of sections pivotally secured together, and further springs combined with said links to elastically suspend said semi-elliptic springs from the side frames, substantially as described.

"15. In a car-truck, the combination with the side frames, of the cross-bolster suspended below the side frames by semi-elliptic springs and articulated and pivotal links, said links comprising a plurality of sections pivotally secured together, and spiral springs about and combined with said links to elastically suspend said semi-elliptic springs from the side frames, substantially as described."

"17. The combination in a car-truck having an upper chord, of the longitudinally-disposed semi-elliptic springs, a transverse bolster supported upon said springs, links depending from and flexibly supported on said upper chord and passing through enlarged apertures therein, said links being articulated between their ends, the ends of the semi-elliptic springs being supported upon the lower articulation of said links, substantially as described."

The parent patent contains the following disclaimer:

"The location of the semi-elliptic springs outside of the wheel-gage on each side of the truck, together with the location of the links for supporting the semi-elliptics closely adjacent to the axle-boxes, and the swinging of said springs from the truck-frame from such points gives a better support for the car-body than does the usual link-hung bolster supported from the truck-transoms within the wheel-gage. These general features of construction, however, are embraced in an application filed by Samuel M. Curwen and myself on the 3d day of November, 1896, Serial No. 610,902, and therefore I do not claim the same herein."

The answer denies the validity of the patents, setting up a large number of earlier ones, and also denies infringement. There was a trial in the Supreme Court of the District, upon which a decree was rendered dismissing the bill. The decree was affirmed by the Court of Appeals, 30 App. D. C. 255, and an appeal was taken to this court.

It is difficult to put one's finger with certainty upon what the plaintiff claims. It certainly is not the total combination of a successful truck. Mr. Brill, the inventor and the plaintiff's assignor, is pictured as playing a large part in the development of street railway trucks, but whether that be true or not, his share in the invention of the truck that we have described, so far as the present patent at least is concerned, must be at best but very small. It is insisted, to be sure, that the case is not affected by inventions for use with steam railroad cars because of the different requirements upon street roads. Cars for the latter use must be low hung to make getting in and out easy, must accommodate the motors hung upon the axles, must be adapted to short curves and so forth. But these differences are not of universal effect; indeed this patent is not confined to street cars. The suspension of the car body upon a semi-elliptic spring hung from the side frame of the truck by a jointed hanger, with most of the characteristics of the present patent, as disclosed in a patent to Thyng in 1845, was obvi-

ously as available for street as for steam railways, and the use of these features by Brill was not a patentable invention. The use, on the modern long car, of two four-wheeled pivotal trucks with a short wheel base and wheels of equal diameter, which support the car body by a pivot on a bolster between the axles, resting on semi-elliptic springs, was not peculiar to Brill. It was described in a patent to Taylor, October 31, 1895, No. 507,855. Brill's specification disclaims at the outset the general features of the truck it describes. Indeed it hardly is denied that every element in the combination was well known in the construction of railway cars.

We are not dealing with a new type of trucks, but with certain features only. At the argument it was admitted that the plaintiff's case must stand or fall on claim 13 of No. 627,898. In that claim the only possible element of novelty is the mode in which the semi-elliptic springs are suspended from the side frames. In practice the links are elastic and the pins on which the whole combination hangs have a universal ball and socket movement, although the claim only says 'movably and resiliently suspended . . . substantially as described.' Neither 'movably' nor 'resiliently' indicates the ball and socket arrangement, but it is described in the specification and we give the plaintiff the benefit of the doubt. We agree, however, with the Circuit Court of Appeals that the substitution of a ball and socket movement for the movement in one direction of the Thyng link, coupled as it was with a slight longitudinal play, required a minimum of invention. A link having universal movement was patented by Beach in 1876. The plaintiff's witness, Akarman, says that there always has been provision made for lateral and longitudinal motion in every well-constructed truck. Spring links to support semi-elliptic springs were old; it is unnecessary to recite the patents in which they appear. The mention of 'the usual link hung bolster' in the disclaimer indicates the indisputable fact. We also agree with the other court that the disclaimer in favor of Brill and Curwen is a solemn admission of the priority of the

devices claimed by them. It certainly covers the collocation of the spring links and semi-elliptic springs. One of the claims of Brill and Curwen is, "12. The combination in a car truck of the side frames, the equalizing-bars movably and resiliently suspended from the side frames, and a bolster supported on said equalizing-bars, substantially as described." It is said that the Brill patent did not follow the Thyng invention for more than fifty years. The answer is that for most of that time it was not wanted. Very soon after the change in street railway travel required it it came.

If the plaintiff's claim could be sustained, which we cannot admit, it would be confined to the specific form of link described. There would be little room for the doctrine of equivalents. The defendant's device does not use a ball and socket but uses a rigid link supported by a relatively unyielding spiral spring in the frame of the truck, and does not infringe the very narrow claim which is the most that in any view could be allowed.

*Decree affirmed.*

MR. JUSTICE MCKENNA dissents.