## GREENAWALT v. AMERICAN SMELTING & REFINING CO.

(District Court, D. Montana.   January 15, 1925.)

No. 319.

1. Patents ⬳328—Greenawalt, 1,348,407, for improvement in apparatus for roasting ores, held void for anticipation.

The Greenawalt patent, No. 1,348,407, for improvement in apparatus for roasting ores, *held* void for anticipation; also *held* not infringed, if conceded validity.

2. Patents ⬳165—Patentee bound by his own construction of claims.

A patentee is bound by the construction placed by him on his claims and accepted by the Patent Office, and on which the patent was granted.

In Equity.   Suit by John E. Greenawalt against the American Smelting & Refining Company.   Decree for defendant.

Edward Horsky, of Helena, Mont., and Harry A. Beimes, of St. Louis, Mo., for plaintiff.

C. E. Pew, of Helena, Mont., and Thomas Ewing and Albert M. Austin, both of New York City, for defendant.

BOURQUIN, District Judge. This conventional infringement suit involves claims 17, 20 to 26, and 47 to 49, all inclusive, of patent No. 1,348,407, issued August 3, 1920, to plaintiff upon application filed November 18, 1910. So far as material, the invention claimed and the facts are simple, and the law is elementary, admitting of consideration and decision brief, but sufficient.

[1] The specifications declare that the invention is "certain new and useful improvements in apparatus for roasting or sintering ores." They proceed to describe the well-known down-draft process, and appropriate apparatus so far commonplace that it is difficult to distinguish new from old, and to ascertain just what is claimed to be plaintiff's invention. Nowhere does he state what particular part or thing is his invention, and even those skilled in the art are left to doubtful conjecture. However, ignoring that, as does defendant, it now appears that the thing claimed as invented and infringed is some part of a cover or hood employed in ignition of ores in a holder or pot.

Of this the description in specifications and drawings is that the cover or hood is flanged, and in use engages with a like flange upon the ore holder, forming "a seal or air and gas tight joint"; that the hood is equipped with oil atomizers and is top-perforated to admit air for combustion; that in operation it forms a chamber filled with flames, which by down draft are drawn into contact with and ignites the entire surface of the ore in the holder; and that the hood may then be shifted to other holders, the combustibles in the ore continuing to burn until exhausted and the process completed. In other words, hood and holder constitute an ore-reducing apparatus like unto a blast furnace, wherein the ores are not fully smelted, but only prepared for smelting. To the hood thus described, some of the claims of the patent are expressly appropriate; but those in issue here are merely in general terms for "an igniting hood for covering and setting fire to the ore," "a flame-confining hood," "an igniter comprising a chamber," or the like, and without reference to the "seal or air and gas tight joint" of specifications and drawings.

The apparatus used by defendant, and alleged to infringe said claims of general terms, is a muffler or hood, whose lower edge does not engage with the ore holder, and so with the latter does not form "a seal or air and gas tight," or any, joint. On the contrary, it is necessarily fixed substantially above and clear of the ore holders (the latter not fixed in place as are plaintiff's, but continuously in quick succession passing beneath the hood), and admits free passage of air, admits the cross-currents of air which plaintiff contends impair the process and his hood is designed to prevent.

That defendant's hood is not within plaintiff's patent is manifest without much discussion. In the process involved, and in analogous arts, furnace tops, covers, or hoods, portable or fixed, forming burners or furnaces, air-tight or otherwise, were well known and used at the time of plaintiff's invention. If in plaintiff's hood is anything of invention, as distinguished from mere mechanical skill in adaptation to various new circumstances of time, conditions, progress, and development, it is of that mediocre quality which confines the patent to virtually the specific thing by it both described and claimed.

An apparatus or improvement whose novelty is a specific design, or whose function is predicated upon a specific relation to other apparatus, or upon a like condition in respect to natural laws, as is the present case, in practical sense admits of no variation and has no equivalents. By it, practically as described and claimed, the patent stands or falls. If the specific design, relation, or condition be essential, things lacking it do not infringe; if not essential, the patent is invalid.

The novelty claimed in plaintiff's improvement, seems to be the seal or air and gas tight joint. It is that, and that alone, so far as relation between hood and holder and the laws of atmospheric influences are concerned, which he described in due and requisite notice to the public. For that reason his general claims cannot be construed to include any other variety of hood.

A claim without description is as futile as a description without a claim. The ambiguous language of his general claims for an improvement must be narrowly construed, limited, and not expanded by specifications and drawings (to which the seeker for information resorts), and must be held to import the hood in them described, and it alone. The claims silent upon the specific relation between hood and holder and in respect to atmospheric conditions, the description of specifications and drawings that disclose it must be read into the claims. See

Brill v. Railway & Electric Co., 215 U. S. 532, 533, 30 S. Ct. 177, 54 L. Ed. 311; Slocomb & Co. v. Layman Mach. Co. (D. C.) 227 F. 94, affirmed in 230 F. 1021, 144 C. C. A. 286; Jones v. Evans, 215 F. 589, 131 C. C. A. 654.

[2] Moreover, plaintiff thus construed his general and ambiguous claims in order to induce acceptance of his application for patent, and he amended the specifications to emphasize the "seal or air and gas tight joint." That construction, accepted by the grantor of the patent, is now conclusive upon plaintiff, even as is the like in any other variety of contract likewise secured. See Supreme Mfg. Corp. v. Mfg. Co. (C. C. A.) 299 F. 66; Lorraine v. Townsend (C. C. A.) 290 F. 59; Selectasine Patents Co. v. Prest-O-Graph Co. (C. C. A.) 282 F. 224.

Apropos of this, it appears that the application originally included 16 claims. All were rejected by reason of various patents, and including Perkins, No. 951,199. Then followed the usual strategy in trial of skill, persistence, and endurance between applicant and Examiner, the usual ingenuity in language, in multiplication, extension, inversion, involution, iteration, and reiteration of words, synonyms, and phrases tending to confuse, obscure, and befog, and in hope eventually to overcome or evade objections, and secure all, if not more than, was originally claimed.

After two years of these tactics, interference was declared with Dwight. The proceedings that followed continued for seven years, and ended in award to plaintiff of all claims in respect to the hood forming a seal or air and gas tight joint with the holder, and of all others to Dwight, including a claim for a hood "arranged to confine hot igniting materials and direct heat therefrom" to the ore in the holder. This award was affirmed by the Court of Appeals. See Greenawalt v. Dwight, 49 App. D. C. 82, 258 F. 982.

To conform to it the Examiner excluded certain claims from the application. Plaintiff then surrendered 21 other claims, and by way of substitution tendered 29 claims, accompanied by request that action be deferred until counsel could personally interview the Examiner. At this interview, doubtless in Dwight's absence, counsel's eloquence prevailed, or the Examiner, exhausted, surrendered. For these substitutions were accepted, although in substance they include all of the rejected original 16 claims, and upon the application, then expanded to 49 claims, patent issued.

In justice to the Examiner thus finishing some laps back of the starting point, it is recorded that he asserted his authority to the bitter end, and at the last constrained plaintiff to accept a series of amendments of that importance which required change of "is" to "are" and the like. The language of these general claims of plaintiff is like to that of the claims of Dwight. Their construction is otherwise by reason of circumstances and principles aforesaid. For that matter, the awards alone suffice to restrict the construction of plaintiff's claims to the hood by him described and to him awarded, and are conclusive upon him.

Whatever is excluded in interference cannot be included in the patent; and whatever thus cannot be included cannot be claimed by construction. That plaintiff's hood is flame-confining or may be flame-directing, is nothing but an attribute of all furnace tops, covers, or hoods, and is not his invention in fact or claim. Defendant's apparatus is unlike plaintiff's, resembles Dwight's or that of Perkins, is not within the claims in suit, and does not infringe.

Adverting to the defense of anticipation, if by naught else, it is made out by evidence that early in 1908 the Peruvian government published a Bulletin 61, minutely, fully, and sufficiently describing certain ore-sintering apparatus in practical operation by the Cerro de Pasco Mining Company, and which employed the same seal or air and gas tight joint between hood and holder, that is claimed to be the novel and central element or feature of plaintiff's patent. In principle the Cerro de Pasco apparatus is substantially like plaintiff's. If later than plaintiff's, it would infringe, and earlier, it anticipates.

The evidence is that the Cerro de Pasco apparatus successfully sintered the ores, though in prevailing conditions was not highly economical, and together with the company's smelter was scrapped and replaced, the apparatus with apparatus like defendant's. In like circumstances and under like conditions of ores, fuels, etc., there is no reason why the Cerro de Pasco apparatus would not sinter substantially like plaintiff's apparatus. That in the former the air for both combustion and down draft enters at the top of the hood, and in the latter only air for combustion enters at the top, the air for the down draft operating by suction from below the ore, is distinction without difference.

At any rate, to effect this change is not invention, nor so claimed in the patent, but is

only usual progress of skill in the art. That publication, more than two years prior to plaintiff's application, is a statutory bar to plaintiff's patent and invalidates it.

Decree accordingly.