**METAL STAMPING CORPORATION et al. v. GENERAL MOTORS CORPORATION.**

Circuit Court of Appeals, Seventh Circuit.
June 18, 1929.

No. 4086.

Arthur H. Boettcher, of Chicago, Ill., for appellants.

Thomas Francis Howe and Henry S. Rademacher, both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The appeal is from an order of the District Court awarding a preliminary injunction against appellants, restraining them from making, or marketing when so made, hub caps for automobiles upon which appear the names "Buick," "Oakland," "Chevrolet," or "Pontiac," in unqualified imitation of appellee's registered trade-marks for such names, as applied by appellee to the hub caps of automobiles which appellee manufactures and sells under such several names.

As is well understood, the hub cap is screwed onto and covers the hub of the wheel, and has the function of protecting the bearings against dust and grit. Caps for the various makes of cars are of different size and design, and are evidently made to be ornamental as well as useful. As the caps of these makes protrude more or less prominently, they are quite subject to injury from contact, and in their use quite occasionally become unscrewed and lost, making replacement necessary. They are, in value, an insignificant part of the machine, those in question being listed to the user at from 20 to 85 cents apiece.

It was the practice of appellants, one to manufacture and the other to distribute caps for the different makes of cars, in exact imitation of those wherewith the cars were equipped by their makers. An assortment of the various caps would then be placed upon a large display card, with name of car and price of caps printed on the card, and the cards thus equipped distributed among garages and other dealers in automobile parts, where the car owner seeking to replace a cap might select and purchase one like those on his car.

The bill alleges that appellee is the manufacturer of these makes of cars, and the owner of the registered trade-marks which have long been used in connection with such cars; and that it manufactures and offers for sale the various replacement parts, including hub caps, in which it continuously does a large business.

Appellants contend that the automobile owner himself has the lawful right to replace parts, and that therefore appellants have the right to make and to sell to the owners such parts for replacement. Generally speaking, this is not controverted. Indeed, appellee concedes to appellants the right to make and sell for replacement the hub caps in exact form of the originals, but denies the right to place upon the caps appellee's trade-marks. It contends that the trade-mark indicates the origin of the product, and its employment by another is calculated to lead the ultimate buyer to believe that the caps so marked were the output of appellee.

This contention seems to be logical and just, and has the sanction of excellent authority. A leading case is Moline Plow Co. v. Omaha Iron Store Co., 235 F. 519 (8 C. C. A.), where plowshares for replacement in Moline Company's plows were stamped with a monogram closely simulating the registered trade-mark which the Moline Company placed upon its plowshares, whether sold on its plows or sold for replacement. Although it appeared that upon each of the alleged offending shares there was pasted a printed statement that they were made by a concern other than the Moline Company, the court denied the right to make and sell for replacement purposes plowshares with the closely simulated Moline trade-mark thereon.

In another case a maker of internal combustion engines, which were trade-marked with the name "Duro," sought relief against a maker of spark plugs which were fitted for use in the Duro engine, from marking the spark plugs with the name "Duro." Injunctive relief was awarded, and was sustained

in Duro Co. v. Duro Co., 27 F.(2d) 339 (3 C. C. A.).

But appellants contend that in the case of the hub caps the trade-mark thereon is made to serve the purpose not alone of a trade-mark, but to help give an individualistic and pleasing appearance to the car itself, which would be marred if an original hub cap should be replaced by another which was materially different in appearance from the rest, and that this would be the result if the replacement cap was not an exact imitation, in all respects, of the others.

While we hardly think that this fact alone would be sufficient to justify appropriation of appellee's trade-mark, we are of the belief that the suggestion is more argumentative than real. Certainly, when the car is in motion, it would scarcely be perceptible whether, between hub caps otherwise alike, one had and another had not the name thereon; and since the different wheels of the car do not synchronize in their movement, it would only be by chance that the lettering on any two of the caps would be in the same position when the car is at rest.

It is easily conceivable that, other things being equal, many car owners may prefer replacement parts to be the product of the makers of their cars, in which case the maker's trade-mark on the copied hub cap might induce the assumption that the hub cap was an output of the makers of the cars, and thus the buyer be deceived by this false indication of origin, and this wholly regardless of whether or not such was the intent of those who made and sold the hub cap.

That the cards on which the hub caps were placed bore the printed statement that the maker was one of appellants is quite beside the question. Purchasers may not notice the printing on the cards, and may act wholly upon the faith of the representation of origin which the name on the cap is likely to convey.

There is no potency in the suggestion, repeatedly put forth for appellants, that to sustain appellee's contentions would give it a monopoly on supplying such replacement parts whereon it had placed its trade-mark, and would enable it to extort unconscionable prices from those who must have the parts. If the public insists upon having trade-marked parts which are the output of the original maker of the car, then in such sense the maker of the car may have a monopoly. We see no reason why the maker may not stamp its mark on every nut and bolt which enters into the construction. This would not prevent others from making and supplying for replacement such nut or bolt or other parts just like those of the original, but it would not justify others in placing thereon any distinctive arbitrary mark which would tend to make the public believe the parts to be the output of the trade-mark owner.

If unconscionable and extortionate practices of the car maker in respect to the supplying of replacement parts may injuriously affect his status in a court of equity when he there seeks protection of his lawful trade-marks, it is sufficient to say that the record here so far discloses no facts which tend to indicate that for any such reason the court should have withheld its injunctive order.

From the present state of the record we are satisfied that it sufficiently appears that the placing of appellee's trade-marks upon hub caps made and sold by appellants is a representation to the ultimate purchaser of their origin with appellee, and is to that extent an invasion of its rights; and we must conclude that in awarding a temporary injunction the District Court did not transgress its discretion.

The decree is affirmed.