## PICK MFG. CO. et al. v. GENERAL MOTORS CORPORATION.

### No. 5291.

Circuit Court of Appeals, Seventh Circuit.

Dec. 18, 1935.

Carl B. Rix, of Milwaukee, Wis., for appellants.

Thomas Francis Howe and Henry S. Rademacher, both of Chicago, Ill., for appellee.

Before SPARKS and ALSCHULER, Circuit Judges, and LINDLEY, District Judge.

ALSCHULER, Circuit Judge.

Appellee sued to restrain appellants from making and selling automobile hubcaps which have reproduced thereon certain trade-marks of appellee, and to restrain appellants from committing acts of unfair competition toward appellee in making and selling automobile hubcaps which simulate the designs which appellee had long before employed and was using upon the hubcaps of automobiles of its manufacture.

Respecting the trade-marks, appellants contend, in brief, that appellee's use of them upon the hubcaps of its automobiles was not for the purpose of indicating origin of the product, but for the purpose of ornamentation; that such use of a trademark is an abandonment of it to that extent; and that such parts as hubcaps, which are part of an automobile, specially subject to destruction in use, may lawfully be simulated in design and supplied by others as a repair or replacement part without thereby trespassing upon the rights of the maker of the automobile. Upon each of these propositions the District Court found for appellee and entered a decree accordingly, restraining appellants as in the bill of complaint prayed.

At the outset another proposition confronts us, predicated upon these facts: On May 8, 1928, this appellee, as plaintiff, filed in the same District Court its bill of complaint against Standard Products Manufacturing Company, one of appellants herein, and Metal Stamping Corporation, alleging like infringement by those defendants of the same trade-marks of appellee, as applied to like hubcaps as here; and charging like unfair competition in the defendants' manufacture and sale of like hubcaps, which simulated the hubcap designs of the plaintiff as long theretofore used by it upon like automobiles of its manufacture. Upon plaintiff's application an interlocutory injunction was granted, restraining the defendants from placing on hubcaps which they made or sold the plaintiff's trademarks, and from simulating the plaintiff's hubcap designs. Upon appeal from the interlocutory injunction, this court affirmed

640

the action of the District Court in granting the interlocutory injunction. Metal Stamping Corp. et al. v. General Motors Corp. (C.C.A.) 33 F.(2d) 411.

Some time thereafter the parties agreed upon the terms of a final decree, which was by their consent duly approved and entered by the court, awarding the plaintiff a permanent injunction restraining the defendants from infringement of plaintiff's trademarks, and from further making or selling hubcaps simulating in design hubcaps manufactured or supplied by the plaintiff for its automobiles, originally and for replacement.

In its bill of complaint in the instant case it was charged that after the entry of that consent decree appellant Pick, who practically owned and controlled Standard Products Manufacturing Company, against which the first decree had been entered, caused the assets of that corporation to be transferred to appellant Pick Manufacturing Company, of which said Pick, owning most of its stock, was likewise in domination and complete control to like intent and purpose as if he and not the corporation were the owner; that such transfer was made for the purpose of fraudulently evading the operation of the consent decree; and that because thereof the said Pick and Pick Manufacturing Company, appellants herein, became and were and are bound and concluded by said consent decree which had been so entered in the former case.

Upon the issue made by this allegation and its denial, the District Court, which heard the evidence, made the following findings of fact:

"7. That defendant, Carl Pick, as president, and owner of a majority of its stock, managed the business of Standard Products Company, that at that time Carl Pick was President and generally managed Pick Manufacturing Company; that he still bears the same official relationship and is the owner of a majority of its stock; that he caused the assets and good will of Standard Products Manufacturing Company to be transferred to Pick Manufacturing Company; that he personally, and as President and Manager of Standard Products Manufacturing Company, filed an answer in contempt proceedings which were started in Equity Suit No. 2285, and personally took part in the negotiations for the form and substance of the consent decree; that he understood that the term, 'letters,' was intended to and did cover plaintiff's symbol and trade mark, 'B,' on its genuine Buick hub caps.

"8. That the defendants, Pick Manufacturing Company, a corporation, and Carl Pick, with full knowledge of plaintiff's claims and rights, fraudulently and with the intent to deceive the public, and thereby to obtain the trade of those who would otherwise purchase plaintiff's hub caps, and with intent to obtain the benefit of plaintiff's advertising, * * * did * * * market and sell, or cause to be manufactured, marketed and sold, * * * spurious hub caps bearing plaintiff's symbols, designs and trade marks for its * * * automobiles * * *."

The findings are fully supported by the evidence. Indeed, upon the record the court might properly have gone further. In a sworn answer to a petition for his citation for contempt in the first cause, Pick stated that he was the "owner of all of the capital stock" of Standard Products Manufacturing Company "except qualifying shares." In his answer in the instant suit it is set forth that he is president of Pick Manufacturing Company and owns a majority of its capital stock. On cross-examination he testified that he was in charge of the Pick Company, and admitted that his brother owns at least a portion of the minority stock.

It is evident that Pick was all along the dominating, controlling, and directing factor of the Standard and Pick corporations, as well as major stockholder in both. It is he who has directed the litigation in both cases, and who negotiated the terms of the final decree which was entered in the first case. He suffered the charter of the Standard Company to lapse and its corporate existence to be abandoned. This, with the transfer of its assets to the Pick concern, which continued to carry on the same business and to make the same invasions of appellee's rights as were enjoined by the consent decree, was in our judgment a fraudulent procedure designed to evade the consent decree. In these circumstances we are satisfied that the consent decree is binding upon appellants here in so far as it has relevancy to matters here in issue which are substantially identical with those adjudicated by the decree in the former suit. Wyoming v. Colorado, 286 U.S. 494, 52 S.Ct. 621, 76 L.Ed. 1245; United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262; Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61

L.Ed. 1148; Brill v. Washington Ry. & Elec Co., 215 U.S. 527, 30 S.Ct. 177, 54 L.Ed. 311; Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065; New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202; Tait v. Western Maryland Ry. Co. (C.C.A.) 62 F.(2d) 933; Warner v. Tennessee Products Corp. (C.C.A.) 57 F.(2d) 642.

Appellants contend that some of the issues of the instant suit were not litigated in the former proceeding. Even if this be so, to the extent that the consent decree adjudicated matters which were here involved, that decree will be binding here; for it is the decree, and not the issues, which controls where the second suit is upon the same claim or demand, so that any matter which is necessarily decided by the entry of a given judgment or decree may not thereafter be litigated by the same parties. Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069; Virginia-Carolina Chemical Co. v. Kirven, 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed. 179; Nashville, etc., Ry. Co. v. United States, 113 U.S. 261, 5 S.Ct. 460, 28 L.Ed. 971; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. In Troxell v. Delaware, etc., R. Co., 227 U.S. 434, 440, 33 S.Ct. 274, 276, 57 L.Ed. 586, it was stated: "Where the second suit is upon the same cause of action set up in the first suit, an estoppel by judgment arises in respect to every matter offered or received in evidence, or which might have been offered, to sustain or defeat the claim in controversy; * * *"

A consent decree, which is accepted by the parties themselves as a determination of the controversy and sanctioned by the court, has at least the same force and effect as judgments rendered judicially upon contest or trial. McGowan v. Parish, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955; Harding v. Harding, 198 U.S. 317, 25 S.Ct. 679, 49 L.Ed. 1066; United States v. Parker, 120 U.S. 89, 7 S.Ct. 454, 30 L.Ed. 601; O'Cedar Corp. v. F. W. Woolworth Co. (C.C.A.) 66 F.(2d) 363; Warner v. Tennessee Products Corp. (C.C.A.) 57 F.(2d) 642; Woods Bros. Const. Co. v. Yankton County (C.C.A.) 54 F.(2d) 304; Rector v. Suncrest Lumber Co. (C.C.A.) 52 F.(2d) 946; Utah Power & Light Co. v. United States (Ct.Cl.) 42 F.(2d) 304.

Comparing the two decrees, we are satisfied that the decree assailed by this appeal adjudicates the same matters, and none others, as those determined in and by the consent decree in the former suit.

Upon the sole ground that the decree here in issue adjudicated only matters which were in all essential respects adjudicated in and by the consent decree which had been entered in the prior suit, both dealing with substantially the same subject-matters in controversy, between parties identical in interest as well as in participation, the decree of the District Court is hereby affirmed.