## JARRÒLT *v.* MOBERLY.

1. The act of the General Assembly of Missouri, approved March 18, 1871, which provides that "it shall be lawful for the council of any city, or the trustees of any incorporated town, to purchase lands, and to donate, lease, or sell the same to any railroad company upon such terms and conditions as such board may deem proper, and for the purposes of assisting and inducing such railroad company to locate and build machine-shops or other improvements upon such lands, and, for such purposes, to levy taxes upon the taxable property of such city or town, and to borrow money and to issue the bonds of such city or town for such purposes: *Provided*, a majority of the qualified voters of such town or city, at a special election to be held therein, shall assent to such purchase and donation," is void, it being in conflict with sect. 14 of art. 11 of the Constitution adopted in 1865, which declares that "the General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

2. The provision which prohibits the creation of an indebtedness by a direct loan of municipal credit does not permit the indirect use of such credit for the same purpose.

3. The act of Feb. 16, 1872, forbidding, under certain penalties therein prescribed, the officers of a municipality in its behalf to loan the credit thereof, or donate to or subscribe stock in any railroad or other company, without the previous assent of two-thirds of the qualified voters, is merely prohibitory in its character, and confers no authority on those officers when such assent was given.

4. *Held*, therefore, that the bonds of the "municipal corporation of the inhabitants of the town of Moberly," in the county of Randolph, in the State of Missouri, dated May 1, 1872, and reciting that they are "issued in pursuance of an election held in said town on the twenty-sixth day of March, A. D. 1872, to decide whether said town should purchase and donate to the St. Louis, Kansas City, and Northern Railway Company two hundred acres of land for machine-shop purposes, the result of said election being two hundred and twenty-eight votes for the purchase and donation and one vote against the purchase and donation; and, in pursuance to orders of the board of trustees of the inhabitants of the town of Moberly, made on the eighteenth day of April, A. D. 1872, which orders were made in accordance with an act of the General Assembly of the State of Missouri, entitled 'An Act to authorize cities and towns to purchase lands, and to donate, lease, or sell the same to railroad companies,' approved March 18, A. D. 1870," are void.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

The plaintiff is a citizen of the State of Illinois. The de-

fendant is the city of Moberly, a municipal corporation of the
State of Missouri.   This action was brought to recover judg-
ment. upon several interest coupons, originally annexed to, but
now detached from, bonds issued by the city for the purchase
of lands, consisting of two hundred acres, to be donated to the
St. Louis, Kansas City, and Northern Railway Company, for
" machine-shop purposes."   The petition — which is the desig-
nation given to the first pleading in the action — avers that on
the 1st of May, 1872, the city issued fifty bonds, similar in
form, differing only in their numbers, each for $500, to each of
which twenty coupons were attached, each for the sum of $25,
payable on the first day of November and of May of each year,
and numbered from one to twenty; and it sets forth a copy of
one of the bonds and coupons, as follows: —

*"Moberly Machine-shop Bonds.*

" No.    .]          UNITED STATES OF AMERICA.          [$500.

" Know all men by these presents, that the ' municipal corpora-
tion of the inhabitants of the town of Moberly,' in the county of
Randolph, in the State of Missouri, acknowledges itself indebted
and firmly bound to W. F. Burrows or bearer in the sum of five
hundred dollars, in current funds, which sum the said inhabitants
of the town of Moberly hereby promise to pay to the said W. F.
Burrows or bearer, at the Bank of America, in the city of New
York, ten years after the date of this bond, together with interest
thereon from date at the rate of ten per cent per annum, which
interest shall be paid semi-annually, in current funds, on the
presentation and surrender at said bank of the annexed coupons
as they severally become due and payable, but this bond is pay-
able at the option of the said inhabitants of the town of Mob-
erly at any time after three years from the date hereof, and is
payable only by a special tax on all the real estate and per-
sonal property lying and being within the corporate limits of said
town.

" This bond is issued in pursuance of an election held in said
town on the 26th day of March, A. D. 1872, to decide whether said
town should purchase and donate to the St. Louis, Kansas City,
and Northern Railway Company two hundred acres of land for
machine-shop purposes, the result of said election being two
hundred and twenty-eight votes for the purchase and donation,

and one vote against the purchase and donation; and in pursuance to orders of the board of trustees of the inhabitants of the town of Moberly, made on the eighteenth day of April, A. D. 1872, which orders were made in accordance with an act of the General Assembly of the State of Missouri, entitled ' An Act to authorize cities and towns to purchase lands and to donate, lease, or sell the same to railroad companies,' approved March 18th, A. D. 1871.

" In witness whereof, the said inhabitants of the town of Moberly have executed this bond, by the chairman of the board of trustees of said town signing his name thereto, and by the clerk of said board of trustees, by order of said board, attesting the same and affixing thereto his signature and the seal of said corporation, in the town of Moberly, county of Randolph, State of Missouri, on the first day of May, 1872.

" J. B. FREEMAN,

*"Chairman of the Board of Trustees of the*
*Inhabitants of the Town of Moberly.*

" ATTEST :

[SEAL.]    " J. W. DORSEY, *Clerk.*

*" Coupon No.* 1.

" $25.]     MOBERLY, RANDOLPH COUNTY, MISSOURI.          [$25.

" The municipal corporation of the inhabitants of the town of Moberly will pay the bearer, at the Bank of America, in the city of New York, twenty-five dollars, on the first day of May, 1872, being six months' interest on bond No.      , for $500.00.

" J. W. DORSEY, *Clerk.*"

The petition also avers that the plaintiff is the holder of coupons amounting to $4,200, originally annexed to these bonds, but now detached from them, which are due and unpaid, for which sum he asks judgment. To the petition the defendant demurred, on the ground, among other things, that the act of the legislature under which the bonds were issued is in conflict with the Constitution of the State, and that the petition does not state facts sufficient to constitute a cause of action. The court sustained the demurrer, and the plaintiff electing to stand upon his petition, final judgment was entered thereon for the defendant.

The judges, however, were divided in opinion upon the questions raised by the demurrer, and, in accordance with the

statute, have certified, for the decision of this court, the following points upon which they differed, namely : —

*First,* Whether the act of March 18, 1870, entitled "An Act to authorize cities and towns to purchase lands, and donate, lease, or sell the same to railroad companies," recited in the bonds, is in conflict with sect. 14 of art. 11 of the Constitution of Missouri.

*Second,* Whether the petition states a valid and sufficient cause of action.

The act of March 18, 1870, under which the bonds were issued, declares that "it shall be lawful for the council of any city, or the trustees of any incorporated town, to purchase lands, and to donate, lease, or sell the same to any railroad company, upon such terms and conditions as such board may deem proper, and for the purposes of assisting and inducing such railroad company to locate and build machine-shops or other improvements upon such lands; and for such purposes to levy taxes upon the taxable property of such city or town, and to borrow money and to issue the bonds of such city or town for such purposes: *Provided,* a majority of the qualified voters of such town or city, at a special election to be held therein, shall assent to such purchase and donation."

Sect. 14 of art. 11 of the Constitution of Missouri of 1865, with which it was contended the act conflicted, declares that "the General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

To meet the objections to the alleged invalidity of the bonds, the plaintiff cited the act of the legislature of Feb. 16, 1872, entitled "An Act to protect counties, cities, and incorporated towns from combinations between railroad companies, county courts, city councils of cities, and boards of trustees of incorporated towns," the first section of which declares that "no county court of any county, city council of any city, nor any board of trustees of any incorporated town, shall hereafter have the right to donate, take, or subscribe stock for such county,

city, or incorporated town, in, or loan the credit thereof to, any railroad company, or other company, corporation, or association unless authorized to do so by a vote of two-thirds of the qualified voters of such county, city, or incorporated town. And any justice of a county court, member of a city council, or member of a board of trustees of any incorporated town, who shall hereafter vote to donate, take, or subscribe stock for such county, city, or incorporated town, in, or loan the credit thereof to, any railroad company, or other company, corporation, or association, unless authorized to do so by a vote of two-thirds of the qualified voters of such county, city, or incorporated town, shall be adjudged guilty of a felony, and on conviction thereof shall be punished by imprisonment in the penitentiary for not less than two years."

Other sections repeal all acts or parts of acts inconsistent with it. The act took effect on its passage. On the 29th of March, 1872, the legislature passed another act, in terms amending the first section of the act of March 18, 1870, so as to read as follows: —

"It shall be lawful for the council of any city, or the trustees of any incorporated town, to purchase land, and to donate, lease, or sell the same to any railroad company, and to contract, for a period of time not exceeding twenty years, with such railroad company, for the payment of all or any part of the taxes which may at any time be levied by the authorities of such town or city, and for such town or city purposes only, upon property of such railroad company, and upon such terms and conditions as such board of said city or town may deem proper, for the purpose of assisting and inducing said railroad company to locate and build machine, work, or other shops, or other improvements, upon such land for the purpose of such purchase, to levy taxes upon the taxable property of such city or town, and to borrow money and issue the bonds of such city or town for such purpose: *Provided*, that two-thirds of the qualified voters of such town or city, at a regular or special election to be held therein, shall assent to such purchase or donation."

This act took effect on its passage.

*Mr. John D. Stevenson* for the plaintiff in error.

*Mr. J. H. Overall*, contra.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The object of the inhibition in the State Constitution was to prevent the creation of debts by counties, cities, and towns on behalf of any company, association, or corporation without the assent of two-thirds of their qualified voters. The loan of their credit, that is, the placing of their obligations for the payment of money for the use of companies, was the usual mode in which they incurred indebtedness. Aid in this way to companies, particularly such as were organized for the construction of railroads, was given so frequently by municipal bodies in Missouri, before the Constitution of 1865 went into effect, as in many instances to greatly embarrass and subject them to burdensome and oppressive taxation to provide for the interest on their obligations and the ultimate payment of the principal.

Numerous acts of the legislature had authorized officers of counties and cities to subscribe for stock in railway companies, and to issue bonds for their aid without limit as to amount and without the previous assent of those who were to be taxed for their payment. In many instances the road, in aid of which the bonds were issued, was never constructed, and as no benefit resulted to the counties and cities, their inhabitants naturally felt impatient under the burdens which their officers had improvidently imposed.

It was the purpose of the constitutional provision to check these abuses, by requiring the previous assent of two-thirds of the qualified voters of the municipal bodies before any more stock should be subscribed by them or any further indebtedness be thus incurred. The issue of obligations directly to the company, association, or corporation, without such previous assent, is within the letter of the prohibition, and to purchase property to be given to such company, association, or corporation by the issue of obligations to others, without such assent, is within its spirit. Both modes of using the bonds of the municipality are equally a use of its credit, the difference being that the one is a direct and the other an indirect way of employing the credit of the municipality for the benefit of the railway company. It would be a narrow and strict construction of the constitutional provision to hold that it prohibited the creation

of indebtedness by a municipality by a direct use of its credit for the railway company, and yet permitted such creation by the indirect use of it for the same purpose. A constitutional provision should not be construed so as to defeat its evident purpose, but rather so as to give it effective operation and suppress the mischief at which it was aimed. In accordance with this principle, this court held in *Harshman* v. *Bates County* that the inhibition in question extended to townships in Missouri as well as to counties, cities, and towns, although townships were not mentioned. To contend, said the court, that the mere subdivision of counties into townships enabled the legislature to evade the constitutional provision is to ignore the manifest intention and spirit of that instrument; that it could not be possible that it was intended to restrict the legislature as to counties and not to restrict it as to mere sectional portions of the counties. 92 U. S. 569.

Considering the provision in this spirit, and looking at the evil to be prevented, we are of opinion that the issue by the defendant of its bonds to purchase lands, to be donated to the railway here, was a loan of its credit which could not be made without the assent of two-thirds of the qualified voters of the city. It is true that a loan implies a return of the thing loaned at some future day. A loan of credit would, therefore, seem to require that the party receiving its benefit should provide for its cancellation by the payment of the bonds issued. This being so, it would be unreasonable to hold that, whilst the framers of the Constitution intended to prohibit a temporary use of the credit of a municipality without the previous assent of two-thirds of its qualified voters, they were willing that the absolute grant of the credit should be made without such assent. We do not think that a construction leading to such a conclusion is permissible. The act of March 18, 1870, must, therefore, be held to be in conflict with the Constitution of the State. It authorizes a majority of the voters of a municipality to do that which the Constitution declares the legislature shall not authorize to be done except by the assent of two-thirds of such voters.

The Supreme Court of Missouri has given a similar construction to the constitutional provision. An act of the legislature

had, among other things, provided for the establishment of a school of mines and metallurgy as a branch of the university of the State, which was to be located in such county having mines as should donate to the board of curators of the university, for buildings and other purposes of the school, the greatest available amount of money and bonds. The act authorized the county court, of a county desirous of making a donation, to issue bonds of the latter to be delivered to the board of curators and to be by them sold, and the proceeds used in the purchase of the land and the erection of the necessary buildings. Under this act, the County Court of Phelps County ordered the issue of bonds, at different times, amounting in all to $75,000, to be used as mentioned, and their delivery to the curators. The order was made without the assent of two-thirds of the qualified voters of the county, and, upon the petition of the State, the sale of the bonds was enjoined, the court holding that their issue was a loan of credit within the constitutional inhibition, and that the act authorizing their issue, without the sanction of two-thirds of the voters of the county, was void. It stated that the object of the inhibition upon county courts and city and town municipalities was to prevent them from taxing the people without their assent. 57 Mo. 178.

The difference between that case and the one at bar is only in the mode of effecting the same result. There the bonds were given to the curators to be by them sold and the proceeds invested in the establishment of the school of mines. Here the bonds were to be sold by the municipality issuing them, and the proceeds used by it in the purchase of lands to be donated to the railroad company. The object of the loan in both cases, in authorizing the issue of the bonds, was the purchase of property and the donation of it to corporations. As remarked by counsel, it is difficult to see how the fundamental law of the State could be evaded by a change of the parties through whom the credit of the municipality is to be converted into money. In either case the debt created is to be paid by taxation.

The subsequent case of the County Court of St Louis County against Griswold does not change this decision. The bonds there considered were issued to purchase lands in St. Louis for

a public park for the benefit of its inhabitants. There was no loan of credit for the use of any other parties in the case. 58 id. 175.

The act of the legislature of Feb. 16, 1872, upon which much reliance is placed by counsel for the plaintiff, is merely prohibitory in its character, forbidding the officers of counties, cities, and towns to donate, take, or subscribe stock in any railroad or other company, corporation, or association, or the loan of their credit, without the previous assent of two-thirds of their qualified voters, and prescribing a punishment for a disregard of its provisions. It confers, of itself, no authority. The inhibition upon the officers of a county, city, or town to loan its credit without the previous assent of others, was not an authority to loan it when such assent was given. Authority to create an indebtedness against a municipality, except on certain conditions, was not conferred, because the attempt thus to create it was made punishable as a crime. Further legislation was needed. Such was the evident opinion of the legislature of the State, for, by an additional act, passed on the 29th of March, 1872, the authority was given in terms.

We answer, therefore, the first question certified to us in the affirmative, and the second in the negative.

*Judgment affirmed.*

MR. JUSTICE HARLAN dissenting.

The recitals in the bonds show that an election was held, in the town of Moberly, three days before the passage of the act of March 29, 1872, to decide whether that town should purchase and donate to the St. Louis, Kansas City, and Northern Railway Company, two hundred acres of land for machine-shop purposes; that two hundred and twenty-eight votes were cast in favor of, and only one against, such donation and purchase; that the bonds in question were issued in pursuance of that election and of the orders of the board of trustees of the town, made on the eighteenth day of April, 1872; and that such orders were made in accordance with the aforesaid act of March 18, 1870.

The circuit judge conceded it to be the settled law of Missouri that municipal aid could be given to railroad companies

without infringing the Constitution of the State; and that if machine-shops constituted an integral or essential part of a rail road, or were necessary for its convenient use or operation, then the act of March 18, 1870, was not obnoxious to the principles announced in *Loan Association* v. *Topeka,* 20 Wall. 655. But he was of opinion that the issuing of the bonds in suit to be used in the purchase and donation of lands to a railroad company for machine-shop purposes was a "loan of credit," upon the part of the town, within the meaning of the State Constitution; and that, consequently, the act of March 18, 1870, was unconstitutional, in that it permitted an issue of bonds, for such purposes, upon the assent only of a majority of the qualified voters of the municipality.

In the view which I take of this case, it is not necessary to decide whether this transaction was, or not, a loan of credit. For, assuming that it was, the petition must be regarded as stating a valid and sufficient cause of action against the defendant, if, at the time of the election, held on the 26th of March, 1870, the act of March 17, 1870, had become so modified by subsequent legislation, as to require the assent of two-thirds of the qualified voters of the town as a condition precedent to any issue of bonds to be applied in the purchase of lands to be donated to the railroad company for machine-shop purposes. And such, I think, was the legal effect of the act of Feb. 16, 1872. The first clause of its first section declares, that " no county court of any county, city council of any city, nor any board of trustees of any incorporated town, shall hereafter have the right to donate, take, or subscribe stock for such county, city, or incorporated town, in, or loan the credit thereof to, any railroad company . . . unless authorized to do so by a vote of two-thirds of the qualified voters of such county, city, or incorporated town." The General Assembly, of course, knew when they passed the law of Feb. 16, 1872, that the previous statute of March 18, 1870, had assumed to authorize counties, cities, and towns to make donations to railroad companies, for machine-shop purposes, upon a bare majority vote of the qualified electors. The prohibition against donations thereafter, except with the sanction of two-thirds of the qualified voters, was, in view of former legislation, equivalent to an affirmative recogni-

tion of power thereafter to make such donations in pursuance of the provisions of the act of Feb. 16, 1872. That act imported into the act of March 18, 1870, the requirement of a two-thirds affirmative vote as a condition precedent to any donation of land for machine-shop purposes. The express repeal, by the act of Feb. 16, 1872, of all parts of laws inconsistent therewith, evinces a purpose, upon the part of the General Assembly, to do something more than declare a violation of that act, by any of the officers therein named, to be a felony. Nor was it intended to withdraw from counties, cities, and towns authority, under any circumstances, to make such donations. Manifestly there was also a purpose to provide against the possibility of donations or loans of credit, under any existing statute, except with the express sanction of two-thirds of the qualified voters of the municipality. The only difficulty in the way of this conclusion arises from the negative character of the language of the first clause of the act of Feb. 16, 1872. But that difficulty seems to be removed by the fact that a previous statute having assumed to confer upon counties, cities, and towns the power to make donations to railroad companies for machine-shop purposes, the object of the act of Feb. 16, 1872, was thereafter to require the previous assent of two-thirds of the electors, and to repeal all acts or parts of acts inconsistent with that requirement. The bonds, upon their face, show the assent of all the electors voting except one. Had these bonds recited, in terms, that they were issued in pursuance of the act of March 18, 1870, as modified by subsequent legislation, there would have been no ground upon which to question the authority to issue them.

But the rights of the purchaser of the bonds should not be sacrificed because the reference to the statute, by authority of which they were issued, was not full or technically accurate. When the election was held, the statute of March 18, 1870, as modified by that of Feb. 16, 1872, authorized an issue of bonds for the purchase of lands to be donated for machine-shop purposes, two-thirds of the qualified voters of the town assenting thereto. The provisions of that statute, as thus modified, seem to have been complied with.

I am of opinion that the act of March 29, 1872, passed after

the election of March 26, 1870, was only cumulative legislation, so far as it related to subjects embraced in the act of March 17, 1870, as modified by the act of Feb. 16, 1872. I think that the act of March 17, 1870, as modified by the act of Feb. 16, 1872, was constitutional, and that the petition states a good cause of action against the defendant, even if the issue, by the town, of bonds for the purposes indicated, was a loan of credit, within the meaning of the State Constitution.

For these reasons I feel obliged to dissent from the opinion and judgment.