STATE OF FLORIDA *ex rel.* JOHN NUVEEN, *Relator*, v. W. B GREER, R. E. CANTEY, ARTHUR CORRY, J. D. BAILEY, GEORGE B. GREGORY AND T. E. DICKENSON, MEMBERS OF AND CONSTITUTING THE CITY COUNCIL, AND J. P. SMITH, CLERK OF SAID COUNCIL OF THE CITY OF QUINCY, FLORIDA, A MUNICIPAL CORPORATION, *Respondents.*

### Division B.

### Opinion Filed October 9, 1924.

Motion for leave to file petition for rehearing denied December 20, 1924.

1. The writ of mandamus does not supersede legal remedies, but rather supplies the want of a legal remedy, therefore two prerequisites must exist to warrant a court in granting this extraordinary remedy; First, it must appear that the relator has a clear, legal right to the performance of the particular duty by the respondent; and second, that the law affords no other adequate or specific remedy to secure the performance of the duty which it is sought to coerce.

2. A peremptory writ of mandamus will not be issued to compel a tax levy and the payment of bonds that were illegally issued by a municipality and their payment has been duly enjoined by judicial decree; but the holder of the bonds may recover judgment in an action at law, on appropriate common counts, for the money paid for the bonds with appropriate interest, where the issue of the bonds or the borrowing of the money was not expressly forbidden by law and the purpose for which the money was used is not immoral or contrary to public policy, and the money has been received and used in good faith by the municipality for a useful public purpose pursuant to express statutory authority though such statute was subsequently judicially declared to be contrary to implied limitations of organic law.

On Motion for Leave to File Petition for Rehearing.

1. Where in adjudicating litigated rights under a statute, it appears beyond all reasonable doubt that the statute is in conflict with some express or implied provision of the Constitution, it is then within the power and duty of the court, in order to give effect to the controlling law, to adjudicate the existence of the conflict between the statute and the organic law, whereupon, the Constitution, by its own superior force and authority, eliminates the statute or the portion thereof that conflicts with organic law, and renders it inoperative ab initio, so that the constitution and not the statute will be applied by the court in determining the litigated rights.

2. The courts alone are by the organic law empowered to authoritatively declare or to adjudge a statute to be in accord with or in conflict with the Constitution, so that the statute, if valid, stands, or if contrary to organic law, will by the operation of the Constitution be rendered invalid from its enactment.

3. If a legislative enactment conflicts with an existing provision of the Constitution, such enactment does not become a law.

4. The intent of a Constitution may be shown by the implications as well as by the words of express provisions.

5. Where a legislative enactment authorizing a municipality to issue bonds has never been adjudged to be constitutional, and it is judicially declared to be in conflict with organic law, the Constitution by its dominant force renders the enactment inoperative ab initio, and bonds issued thereunder are void because issued without authority of law.

6. Bonds sold to *bona fide* holders while the statute authorizing the bonds is duly adjudged to be Constitutional, are valid, and the purchaser is protected from a subsequent decision of invalidity by the property rights clause of the organic law, because the bonds being valid when issued are lawful obligations to pay money, therefore property, and

the Constitution secures to the purchaser the "inalienable right of acquiring, possessing and protecting property," and requires the courts to afford a remedy by due course of law for any injury done to property rights.

7. Where a statute is unconstitutional and has never been adjudged to be valid, bonds issued thereunder are void and a purchaser acquires no lawful property rights therein as *bonds* that are secured by the Constitution.

8. Rules of decision applied in the Federal Courts do not empower a State Court to hold a statute, which has never been held to be constitutional, but is adjudged to conflict with organic law, to be valid as to past transactions but invalid as to the future, so as to render valid bonds previously issued under the invalid statute to bona fide holders for value. The State Courts have no such power under the Constitution, and it cannot be assumed.

0. The doctrine of estoppel is a part of the common law that is in force in this State and it should be appropriately applied when the facts in a litigated case justify it. But the principal of estoppel does not operate to confer authority, though it may under some circumstances be invoked to preclude a denial that authority conferred was duly exercised.

10. While a municipality may be estopped to deny that the authority to issue bonds given by a valid statute was not properly exercised, in issuing bonds to bona fide holders for full value (County of Jefferson v. B. C. Lewis & Sons, 20 Fla. 980), yet a municipality will not be estopped from denying the validity of a statute under which bonds were issued even to *bona fide* holders.

11. A municipality can exercise only such powers as are conferred by law, and where a legislative enactment purports to confer upon a municipality authority to issue bonds, and such authority is in conflict with express or implied provisions of the Constitution, the enactment confers no authority and bonds issued thereunder are void even in the hands of *bona fide* holders and the municipality is not estopped to deny the validity of the bonds.

12. That which is implied in a Constitution is as much a part of it and is as effective as that which is expressed; and grades or degrees of implication, if there be any, do not affect the operation of the constitution to nullify statutes that are duly adjudged to be in conflict with the Constitution.

13. All persons are held to notice that all statutes are subject to all express and implied applicable provisions of the Constitution, and also that should a conflict between a statute and any express or implied provision of the Constitution be duly adjudged, the Constitution by its own superior force and authority would render the statute invalid from its enactment, and further that the courts have no power to control the effect of the Constitution in nullifying a statute that is adjudged to be in conflict with any of the express or implied provisions of the Constitution.

14. Rights acquired under a statute that has not been adjudicated to be constitutional are subject to a subsequent adjudication that the statute is unconstitutional, even though the statute had been generally considered valid.

15. Rights acquired under a statute while it is duly adjudged to be constitutional are valid legal rights that are protected by the Constitution, not by judicial decision. But rights acquired under a statute that has not been adjudged valid are subject to be lost if the statute is adjudged invalid; though the statute was considered valid by eminent attorneys, public officers and others.

16. The Federal and State organic prohibitions against "impairing the obligation of contracts," relate to legislative action and not to judicial decisions.

A case of original jurisdiction.

Motion to quash granted.

*Wm. W. Flourney*, for Relator;

*J. Baxter Campbell, W. W. Wright* and *Myers & Myers,* for Respondents.

WHITFIELD, P. J.—In mandamus proceedings brought in this Court it is sought to require designated municipal officers of the Town of Quincy to levy a tax to pay interest on, and ultimately to pay the principal of $10,000 of bonds issued in 1909 by the Town of Quincy under express statutory authority to issue such bonds "for the purpose of erecting school houses and maintaining a system of public education in said municipality." Sec. 22, Chap. 5844 Acts of 1907. See Validation Act, Chap. 6095, Acts of 1909.

On motion to quash the alternative Writ it is in effect urged that it appears thereby that the bonds have been judicially held to be invalid and their payment enjoined and that the allegations of the Writ make it appear that the relator has no legal right to require, or the respondents no legal duty to perform, the official acts commanded by the Writ.

A Writ of Mandamus does not supersede legal remedies, but rather supplies the want of a legal remedy, therefore two prerequisities must exist to warrant a Court in granting this extraordinary remedy; First, it must appear that the relator has a clear, legal right to the performance of the particular duty by the respondent; and, second, that the law affords no other adequate or specific remedy to secure the performance of the duty which it is sought to coerce. Myers v. State *ex rel.* Thompson, 81 Fla. 32, 87 South. Rep. 80. See also State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South. Rep. 213, 13 L. R. A. (N.S.) 320; 12 Ann. Cas. 359.

The bonds in this case issued by the municipality were expressly and specifically authorized by statute. The

Constitution provided that "the Legislature shall have power to * prescribe the jurisdiction and powers" of municipalities. There was and is no *express* provision of the Constitution making the issue of the bonds unlawful. Their issue is not expressly forbidden by law and the purpose of the issue is not immoral or contrary to law or public policy, but the purpose in authorizing and in issuing the bonds was to facilitate public education in the municipality. The money for the bonds was received and used by the municipality for the erection of a public school building in the municipality as expressly authorized by the statute. Interest on the bonds was paid for several years. Subsequently, the Supreme Court of the State at the suit of a taxpayer to enjoin the issue of bonds by another municipality under similar statutory powers, decided that upon a consideration of all the pertinent provisions of the Constitution, a municipality *as such* could not be authorized by statute to issue bonds for *public free school* purposes *in aid* of the uniform system of public free schools required by the Constitution to be maintained by the State, counties and school districts, particularly in view of the express organic provision that "any incorporated town or city may constitute a school district." Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716. This was an *implied organic limitation* upon the express authority of the Legislature to "prescribe the jurisdiction and powers" of municipalities *as such,* which *implied* limitation was *developed by judicial construction and interpretation* after the bonds here involved had been issued and sold and the proceeds used by the municipality for its benefit pursuant to express statutory authority. Thereafter a taxpayer of the municipality relying upon the decision referred to, secured an injunction against further payments of interest on the bonds.

See Monroe v. Reeves, 71 Fla. 612, 71 South. Rep. 922. Mandamus is now brought by the holder of the bonds in due course, seeking a tax levy by the municipal authorities for the payment of the interest and the redemption of the bonds.

Mandamus will not compel the tax levy and payment of the bonds or the interest thereon, for the reason that the bonds being illegally issued, it is not the duty of the municipal officers to pay them. Such payment of the bonds has been enjoined. But the holder of the bonds can recover in an action at law, on appropriate common counts, the money paid for the bonds with interest according to law. Sec. 19 R. C. L., p. 1032, Note 11; 5 McQuillin on Munic. Corp. Sec. 2349; 5 Dillon's Munic. Corp. (5th ed.) Sec. 961. See also Cullen v. Seaboard Air Line R. Co., 63 Fla. 122, 58 South. Rep. 182.

In County Commissioners of Columbia County v. King, 13 Fla. 451, mandamus was utilized because the issue of similar bonds had been held valid by the Supreme Court when the bonds sought to be enforced were issued. In that case, the bonds being valid, there was a legal duty to pay them and mandamus was applied. Here the bonds are invalid and there is no duty to pay the bonds. But there would be a legal duty to pay a judgment duly obtained for the return of the money, with appropriate interest, that was received and used by the municipality.

Issuance of the bonds was not expressly forbidden and penalized and the municipality and the relator, bond holder, were not in pari delicto. Thomas v. City of Richmond, 12 Wall. (U. S.) 349, 20 L. Ed. 453. Neither party was at fault in the premises. The bonds were expressly authorized by statute and were issued as required by the statute. The proceeds were received by the municipality and used for its benefit. The implied limitation that was

held by the Court to make the issue of the bonds contrary to organic law, was developed by judicial interpretation after the bonds had been sold and the money had been used by the city for its purposes as expressly and specifically authorized by the statute. These circumstances clearly render the municipality liable for the amount of the money so received by it with interest. See Brill v. Washington Railway & Electric Co., 215 U.S. 527, 30 Sup. Ct. Rep. 177; Louisiana v. Wood, 102 U. S. 294. See 7 A. L. R. 346 and notes.

In Morton v. City of Nevada, 41 Fed. Rep. 582, cited in 5 McQuillin on Municipal Corporations, Section 2349, there was an express organic prohibition that made the debt as contracted contrary to law and void, and the proceeds were used for the benefit of a private corporation contrary to law and the action was barred by the statute of limitations. See Jarrolt v. City of Moberly, 103 U. S. 580, 26 L. Ed. 492.

The bonds having been issued contrary to law as judicially determined, it is not the legal duty of the municipal officers to levy taxes to pay the interest on or the principal of the bonds as such, or to pay the indebtedness according to the tenor of the bonds; and correlatively, the bonds being illegal, the relator has no legal right to have them paid by the process of mandamus. Payment of a judgment duly obtained for the money received by the municipality would be a legal duty of the municipal officers,, which duty the relator could enforce by mandamus or other appropriate proceedings in due course of law.

In Pine Grove Township v. Talcott, 19 Wall. (U.S. 666, 22 L. Ed. 227, the action was in assumpsit to recover "the amount of bonds" that had been held to be invalid by the State Court but which were in effect held to be valid by the United States Supreme Court.

In State v. Dickerman, 16 Mont. 278, 40 Pac. Rep. 698, mandamus was applied to enforce payment by a county treasurer of the amount of a warrant duly issued on a contract held to be valid. See also Savage v. Sternberg, 19 Wash. 679, 54 Pac. Rep. 611, 67 Am. St. Rep. 751.

Chapter 9057, Acts of 1921, appears to be designed to authorize the municipality, notwithstanding the lapse of time, to return with interest thereon the money received by the city for the bonds in question though there appears to be a clerical error in the date of the bonds named in the Act.

The motion to quash the alternative writ is granted.

WEST AND TERRELL, J. J., concur.

TAYLOR, C. J., AND BROWNE, J., concur in the opinion.

ELLIS, J., concurs in the conclusion.

On Motion for Leave to File Petition for Rehearing

WHITFIELD, P. J.—The 30 days allowed by Rule 25 of the Supreme Court Rules for filing applications for rehearing having expired, a motion is made herein by counsel for the relator for leave to file an accompanying petition for rehearing.

The suggestion is that certain contentions made upon authorities citied were overlooked by the court in rendering the opinion herein. All the contentions made were carefully considered.

In this case the statutory provision under which the bonds were issued, was held to be invalid because it provided for a bond issue by the city as a municipality "for the purpose of erecting school houses and maintaining a system of public education in said municipality," when

the constitution provides that "the legislature shall pro-
vide for a uniform system of public free schools," with
counties and school districts as the units for such "uniform
systems," and with a special provision that "any incor-
porated town or city may constitute a school district,"
as such organic provisions by implication exclude the
giving of legislative authority to a city for the mainten-
ance of a system of public education, even though the
constitution authorizes the legislature to prescribe the
powers of cities.   The result is that by virtue of the cited
provisions of the constitution "the maintenance of a sys-
tem of public education", meaning a system of public
free schools, is not under the present Florida constitution,
a permissible "municipal purpose" for which the legisla-
ture may authorize a city as such to "assess and impose
taxes" under Section 5, Article IX, Constitution.   Brown
v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716;
Munroe v. Reeves, 71 Fla. 612, 71 South. Rep. 922.

Where in adjudicating litigated rights under a statute,
it appears beyond all reasonable doubt that the statute is
in conflict with some express or implied provision of the
constitution, it is then within the power and duty of the
court, in order to give effect to the controlling law, to
adjudicate the existence of the conflict between the statute
and the organic law, whereupon the constitution, by its
own superior force and authority, eliminates the statute
or the portion thereof that conflicts with organic law, and
renders it inoperative *ab initio,* so that the constitution
and not the statute will be applied by the court in de-
termining the litigated rights.   The courts alone are by
the organic law empowered to authoritatively declare or
to adjudge a statute to be in accord with or in conflict
with the constitution, so that the statute, if valid, stands,
or if contrary to organic law, will by the operation of the

constitution be rendered invalid from its enactment. 12 C. J. 800. The opinions of officials and of attorneys and others that a statute is valid may be persuasive in a judicial determination of the matter, but such opinions and acts done pursuant to such opinions, do not affect the power and duty of the court to adjudge a statute to be in conflict with organic provisions when in the judgment of the court there is such conflict; nor do such opinions and acts affect the operation of the dominant force of the constitution in rendering the statute inoperative *ab initio* to the extent that it conflicts with the superior law as judicially determined.

If a legislature enactment conflicts with an existing provision of the constitution, such enactment does not become a law. The intent of a constitution may be shown by the implications as well as by the words of express provisions.

Where bonds are issued pursuant to a valid statute, mere irregularities in issuing the bonds may not affect their validity. County of Jefferson v. B. C. Lewis & Sons, 20 Fla. 980. But when a statute violates the constitution in authorizing bonds to be issued, the statute being inoperative as authority for their issue, the bonds are void (State *ex rel.* Bours v. L'Engle, 40 Fla. 392, 24 South. Rep. 539; Holland v. State, 15 Fla. 455); and the courts may enjoin their issue (Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716), or their payment. Munroe v. Reeves, 71 Fla. 612, 71 South. Rep. 922.

Where a legislative enactment authorizing a municipality to issue bonds has never been adjudged to be constitutional, and it is judicially declared to be in conflict with organic law, the constitution by its dominant force renders the enactment inoperative *ab initio*, and bonds

issued thereunder are void because issued without authority of law.

Bonds sold to *bona fide* holders while the statute authorizing the bonds is duly adjudged to be constitutional, are valid, and the purchaser is protected from a subsequent decision of invalidity by the property rights clauses of the organic law, because the bonds being valid when issued are lawful obligations to pay money, therefore property, and the constitution secures to the purchaser the "inalienable right of acquiring, possessing and protecting property," and requires the courts to afford a remedy by due course of law for any injury done to property rights. But where a statute is unconstitutional and has never been adjudged to be valid, bonds issued thereunder are void and a purchaser acquires no lawful property rights therein *as bonds* that are secured by the constitution. See 5 L. R. A. (N. S.) 860.

Where actions upon municipal bonds are brought in the Federal courts, and the highest court of the State has held that the statute authorizing the bonds does or does not conflict with the constitution of the State, the Federal court will follow the State decisions, if they do not conflict with controlling Federal law. But where the State decisions are in conflict or in confusion as to the validity of the statute under the State constitution or where the decisions of the State courts as to the validity of the statute are predicated upon Federal law or upon the principles of general jurisprudence, or where the State court has overruled its prior decisions as to the validity of a statute, and great injustice results therefrom, the Federal courts will exercise their own judgment in determining the validity of the statute under which the bonds in controversy were issued. See 12 C. J. 990; 4 Wallace 270. These rules of decision applied in the

Federal courts do not empower a State court to hold a statute, which has never been held to be constitutional, but is adjudged to conflict with organic law, to be valid as to past transactions but invalid as to the future, so as to render valid bonds previously issued under the invalid statute to *bona fide* holders for value. The State courts have no such power under the constitution, and it cannot be assumed. See 35 L. R. A. 666.

The doctrine of estoppel is a part of the common law that is in force in this State and it should be appropriately applied when the facts in a litigated case justify it. But the principle of estoppel does not operate to confer authority, though it may under some circumstances be invoked to preclude a denial that authority conferred was duly exercised. See 19 R. C. L., p. 1000.

While a municipality may be estopped to deny that the authority to issue bonds given by a valid statute was not properly exercised, in issuing bonds to *bona fide* holders for full value (County of Jefferson v. B. C. Lewis & Sons, 20 Fla. 980), yet a municipality will not be estopped from denying the validity of a statute under which bonds were issued even to *bona fide* holders. See L. R. A. 1915A 916 Notes.

A municipality can exercise only such powers as are conferred by law, and where a Legislative enactment purports to confer upon a municipality authority to issue bonds, and such authority is in conflict with express or implied provisions of the Constitution, the enactment confers no authority and bonds issued thereunder are void even in the hands of *bona fide* holders and the municipality is not estopped to deny the validity of the bonds. 19 R. C. L. 1006.

It is conceded that if the statutory provision authorizing the bonds to be issued by the city conflicts with an express

provision of the Constitution or if it conflicts with a pro-
vision that is *necessarily* implied from express provisions,
.the bonds are void even though they were issued and sold
to *bona fide* holders before the conflict between the statute
and the Constitution was adjudicated, because it is ad-
mitted that all persons are held to notice of all *express*
and all *necessarily* implied provisions of the constitution.
But it is argued that the implied provision with which the
statute in this case conflicts, does not *necessarily* result
from express provisions of the constitution, but that it is
merely a permissible implication developed by judicial in-
terpretation, and the public was not held to notice of it,
before it was adjudged, since the implied provision was
not discovered by eminent members of the legal profession
who considered the statute valid, or by the legislative,
executive and administrative officers who regarded the
statute as valid, and that in adjudicating a conflict be-
tween the statute and the judicially developed implied
provision of the constitution, the court should not let
the effect of such conflict apply to past transactions by
which bonds issued under the statute were sold to *bona
fide* holders for value.   This contention is not tenable (1)
because what is implied in a constitution is as much a
part of it and is as effective as that which is expressed
(State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 South. Rep.
929; Mugge v. Warnell, 58 Fla. 318; State v. L'Engle,
40 Fla. 392; 12 C. J. 699, 719; United States v. Babbit,
1 Balck (U. S.) 55 ,text 61; Savage v. Jones, 225 U. S.
501, text 533, 32 Sup Ct. Rep. 715; Page v. Allen, 58
Pa. St. 338, Ann. Cas. 1913B 172; 37 L. R. A. (N. S.)
825; and grades or degrees of implication, if there be any,
do not affect the operation of the constitution to nullify
statutes that are duly adjudged to be in conflict with the
constitution; (2) because the courts determine the validity

of a statute, and, notwithstanding the opinions and actions
of others, when an Act of the legislature is duly held to
be invalid because in conflict with express or implied
provisions of the constitution, it is invalid from its enact-
ment and not from the date of the decision adjudging its
invalidity; and if the act is void the bonds issued solely
upon its authority are void, though the bonds were issued
to *bona fide* holders prior to the date the statute was ad-
judged to be invalid; (3) because the statutory provision
is a local law applicable to only one city and under neither
the constitution of 1868 nor the present constitution have
particular municipalities been authorized to "maintain
a system of public education," but the organic law has
required "a uniform system of public free schools"
throughout the State, in which the municipalities as such
do not participate; (4) because no statutory authority
to a municipality to issue bonds of a similar character
has been judicially held to be valid in this State, and a
previous decision indicated the invalidity of the statute
in this case (40 Fla. 392); (5) because the implication
contained in the constitution forbidding statutes au-
thorizing municipalities to maintain a system of public
eductaion or a system of public free schools, clearly ap-
pears beyond reasonable doubt or it would not have been
deduced and applied by the court, and (6) because all
persons are held to notice that all statutes are subject
to all express and implied applicable provisions of the
constitution, and also that should a conflict between a
statute and any express or implied provision of the con-
stitution be duly adjudged, the constitution by its own
superior force and authority would render the statute
invalid from its enactment, and further that the courts
have no power to control the effect of the constitution
in nullifying a statute that is adjudged to be in conflict

with any of the express or implied provisions of the constitution.

The Constitution confers judicial power upon the courts to afford remedies "by due course of law" for injuries done to personal and property rights; and the courts have no authority to administer justice except "by due course of law;" therefore when a statutory provision under which municipal bonds were issued, is duly adjudged by the courts to be in conflict with the Constitution, upon which adjudication the Constitution by its own superior force and authority renders the statutory provision inoperative from its enactment, thereby establishing the invalidity of the bonds, "due course of law" does not authorize or permit the courts to adjudge that the statutory provision authorizing the bonds to be issued is not invalid as to past transactions when the Constitution itself renders the enactment void *ab initio*.

Rights acquired under a statute that has not been adjudicated to be constitutional are subject to a subsequent adjudication that the statute is unconstitutional, even though the statute had been generally considered valid. This is so because under the Constitution the courts alone have the power to authoritatively determine the validity of a statute. 12 C. J. 800. Validity or invalidity relate to the enactment of a statute under the existing organic law and not to a subsequent date. The courts have no power to make a statute inoperative only from the date of an adjudicated invalidity, because the courts merely adjudge that a statute conflicts with organic law, and the Constitution then operates to make the statute void from its enactment, the courts having no power to control the operation of the Constitution. It is not material whether the courts adjudge a statute to conflict with an express provision, or with a necessarily implied provision of the Con-

stitution, or with a subtle and not readily perceived implied provision of the Constitution, since if a conflict with organic law is adjudged it is equally effective to let the Constitution nullify the statute whether the conflict is with express or implied provisions or whether the implied provision is patent or concealed. The Constitution recognizes no distinction in judicial processes between inescapable conclusions and other permissible conclusions in interpreting the controlling law. The adjudication suffices for the operation of the Constitution, and the ease or difficulty of the processes leading to the adjudication is wholly immaterial. People v. Albertson, 55 N. Y. 50; 6 R. C. L. p. 105; 25 R. C. L. 979.

Rights acquired under a statute while it is duly adjudged to be constitutional are valid legal rights that are protected by the Constitution, not by judicial decision. But rights acquired under a statute that has not been adjudged valid are subject to be lost if the statute is adjudged invalid; though the statute was considered valid by eminent attorneys, public officers and others.

This is not a case where a statute has been judicially held to be valid, and after rights have been acquired under it while it was held to be valid, the former opinion is overruled and the statute is held to be unconstitutional. In such a case the later decision renders the statute invalid from its passage; but not being a "law" the decision does not "impair the obligation of contracts," and where it does not give effect to a "law impairing the obligation of contracts" (Detroit United Ry. v. City of Detroit, 242 U. S. 238, 37 Sup. Ct. Rep. 87, 193 U. S. 635), it does not violate the contract clause of the Federal Constitution, nor the due process clause of the Federal Constitution. Tidal Oil Co. v. Flanagan, 263 U. S. 444, 44 Sup. Ct. Rep. 197; 12 C. J. 990; 6 R. C. L. 332; 227 U. S. 150; Fleming v.

Fleming, 264 U. S. 29, 44 Sup. Ct. Rep. 246. See also, Milwaukee Electric Ry. & Light Co. v. State of Wisconsin *ex rel.* City of Milwaukee, 252 U. S. 100, 40 Sup. Ct. Rep. 306, as to equal protection of the laws. Yet rights acquired under a statute *while it was judicially held to be valid,* were legally acquired as the law was then authoritatively interpreted, and such rights may be protected by the organic provision securing the "inalienable right of acquiring, possessing and protecting property," which accords with the plainest principles of justice. See County Commissioners of Columbia County v. King, 13 Fla. 451, text 464; 12 C. J. 990; 76 Ohio St. 341; 10 L. R. A. (N. S.) 1112; 51 W. Va. 172. See also Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273, where a later decision held a statute to be constitutional that had theretofore been held to be unconstitutional. Pierce v. Pierce, 46 Ind. 86; 12 C. J. 801. The organic provision is not that the State shall not impair the obligation of contracts, but that "no State shall *pass any law* impairing the obligation of contracts."

Nor is this a case where bonds were issued under a valid statute, and the municipality is, by recitals contained in the bonds (Gunnison County Commr's. v. E. H. Rollins & Sons, 173 U. S. 225, 19 Sup. Ct. Rep. 390; City of Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. Rep. 613), or in the record of the proceedings (County of Jefferson v. B. C. Lewis & Sons, 20 Fla. 980) estopped to deny that its officers complied with the statute in issuing the bonds. See 15 C. J. 624; L. R. A. 1915A 916, Note. Here, the statute under which the bonds were issued, has never been adjudged to be valid. Having been duly adjudicated to be invalid it affords no authority whatever for issuing the bonds, and the city is not estopped to deny the validity of the bonds even though they have been sold for full value

to *bona fide* holders. In such case there is an entire absence of valid authority to issue the bonds, and the holder is bound to notice of the invalidity of the statute. Lewis· v. City of Shreveport, 108 U. S. 282, 2 Sup. Ct. Rep. 634; City of Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. Rep. 442; See Township of East Oakland v. Skinner, 94 U. S. 255; Town of South Ottawa v. Perkins, 94 U. S. 260; McClure v. Township of Oxford, 94 U. S. 429; 19 R. C. L. p. 1006.

The *decisions* in the cases cited by counsel do not sustain his contention.

In Township of Pine Grove v. Talcott, 19 Wall. (U. S.) 666, the United States Supreme Court affirmed *not the opinion,* but the judgment of the United States Circuit Court in Federal Cases No. 13735, 1 Flip. 120, the Supreme Court holding that notwithstanding a contrary holding by the State Court, (People v. Salem, 20 Mich. 452,) the statute of the State there involved authorizing the issue of the bonds there in controversy, was *not in conflict* with the Constitution of the State, and that *in the Federal forum* the statute and the bonds issued thereunder would be held to be valid under "principles of general jurisprudence." If the statute was ultimately held to be valid, it was valid *ab initio.* Christopher v. Mungan, 61 Fla. 513, 55 South. Rep. 273; 12 C. J. 801.

The holding in the Talcott case is not that the implied provision or principle of organic law, with which the statute conflicted, *as held by the State decisions,* could not be readily perceived; but that the implication could not fairly be deduced from any express provision of the State Constitution, and that the decision of the State Court was contrary to the principles of general jurisprudence as applied in the Federal Court and in other State Courts. The decision of the Federal Court was not that the statute was

valid merely as to past transactions, but that notwithstanding the State decisions the statute did not conflict with the State Constitution. Here the court re-affirmed the previously adjudged invalidity of the statute under which the bonds in this case were issued, and such holding is predicated, not upon principles that "belong to the domain of general jurisprudence" but upon an implication shown by cited sections of the State Constitution. See Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716. At the time the bonds in this case were issued there had been no decision of the State or Federal courts that bonds issued for a similar purpose under express statutory authority were valid, so as to invoke the rule applied in the Federal courts. See Wilkes County v. Coler, 180 U. S. 506, 21 Sup. Ct. Rep. 458; See also L. R. A. 1915A Note p. 981; See also Gelpcke v. City of Dubuque, 1 Wall. (U. S.) 175; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. Rep. 10; Tidal Oil Co. v. Flanagan, 263 U. S. 444, 44 Sup. Ct. Rep. 197; L. R. A. 1915A 916, Note. See 12 C. J. 990. Compare 1 Wallace 175 and 10 Wallace 511. See 58 L. R. A. 394; 23 L. R. A. (N. S.) 500; 5 L. R. A. (N. S.) 860.

In County Commissioners of Columbia County v. King, 13 Fla. 451, the statute involved had previously been held to be valid (Cotten v. County Commissioners of Leon County, 6 Fla. 610), and such holding was supported "by the almost unanimous concurrence of the courts of last resort in all the States of the Union," therefore the court declined "to enter into a discussion of the" validity of the statute (County Commissioners of Columbia County v. King, *supra* 462), and held that the bonds "having been issued under the sanction of the highest judicial authority of the State," even if the court were then to declare to be unconstitutional the Act under which the bonds were issued, such decision "would not affect the bonds hereto-

fore so issued, but would operate only upon the future.''
The bonds having been issued to *bona fide* holders when the
Act was held valid by the highest court of the State, they
were lawfully acquired and were secured by the organic
right to "protect property" lawfully acquired.    Man-
damus was awarded, the bonds being *valid express obliga-*
*tions* for *stated amounts* that needed no further ascertain-
ment.   In this case the statute under which the bonds were
issued has never been adjudicated to be valid and the bonds
here in controversy were not issued under the sanction of
any judicial authority; but the bonds have been heretofore,
though subsequent to their issue and sale, declared to be
invalid because the Act of the legislature under which they
were issued violated the implications *contained in stated*
*provisions* of the Constitution, and there was no valid au-
thority for issuing the bonds.   Munroe v. Reeves, 71 Fla.
612, 71 South. Rep. 922.   Different parties are here asking
relief, but the former adjudication of the invalidity of the
statute is binding as a precedent.   The statute being void,
the bonds issued thereunder are void, and the payment of
void bonds will not be enforced by mandamus.   The Fed-
eral and State organic prohibitions against "impairing the
obligation of contracts" relate to legislative action and not
to judicial decisions.   12 C. J. 990; 227 U. S. 150, 544;
18 Fla. 512; 263 U. S. 444.

In Gelpcke v. City of Dubuque, 1 Wall. (U. S.) 175, the
Supreme Court of the United States held that when mu-
nicipal bonds are issued under a State statute held to be
valid, a subsequent decision of the State court that the
statute is invalid, will not be followed by the Federal court
in suits involving bonds issued previous to the holding by
the State court that the statute is invalid.   The rule there
approved is:   "If a contract, when made, was valid by
the laws of the State as then expounded by all departments

of the government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent action of legislation, or decision of its courts altering the construction of the law.'' Olcott v. Supervisors of Fond du Lac County, 16 Wall. (U. S.) 678; Taylor v. City of Ypsilanti, 105 U. S. 60.

The above quoted rule has been modified in so far as it relates to judicial decisions, since the organic provision as to impairing the obligation of contracts is directed at legislative, not judicial, action. See 12 C. J. 990; Tidal Oil Co. v. Flanagan, 263 U. S. 444, 44 Sup. Ct. Rep. 197; 159 U. S. 103; 227 U. S. 150.

In this case the statute was never held to be valid. It was never administered as law in the courts of the State, and it was held invalid when first challenged. The facts that the validity of the statute was assumed by the legislature in enacting it and by the municipal officers in issuing the bonds under the statute and that eminent counsel considered the statute valid, do not affect the result that flows from a judicial adjudication that the statute is invalid. When the statute in this case was held to be invalid, it was void *ab inito* and bonds issued under it are void even though in the hands of *bona fide* holders for full value. The purchaser took the bonds subject to the contingency that the statute might be duly adjudicated to be invalid, its validity not having been already adjudicated; and if the statute be held invalid the bonds are necessarily void for want of authority to issue them, even though they are in the hands of *bona fide* purchasers for value, and no principle of estoppel by recitals in the bonds or otherwise can make the municipality liable in a suit brought on the bonds. 19 R. C. L. p. 1006, §300, Note 15.

In Hoffman v. City of Quincy, 4 Wall. (U. S.) 535, a subsequent statute attempted to impair contract rights se-

cured under a previous valid statute. Mandamus was applied because "the validity of the bonds was not denied," and the tax levy was authorized by previous statutes.

In Board of Commissioners of the County of Knox v. Aspinwall, 21 How. (U. S.) 539, the question was not the validity of the statute, but whether the statute had been complied with by the administrative officers in issuing the bonds held by *bona fide* purchasers. See also Supervisors v. Schenk, 5 Wall. (U. S.) 772; City of San Antonio v. Mehaffy, 96 U. S. 312; County of Mercer v. Hackett, 1 Wall. (U. S.) 83; Town of Venice v. Murdock, 92 U. S. 494; City of Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. Rep. 613.

The legislature in view of organic limitations upon the subject, being without power to authorize the bond issue, the Act, Chapter 6095, Acts of 1909, purporting to validate the bonds is of course ineffectual. 12 C. J. 1091; 15 C. J. 627.

Motion denied.

WEST AND TERRELL, J. J., concur.

TAYLOR, C. J., AND BROWNE, J., concur in the opinion.

ELLIS, J., not participating.